KLATTE, Clerk of the Civil Court of Milwaukee County, Appellant, vs. FRANKLIN STATE BANK and others, Respondents.

*March 7—June 6, 1933.*

614

For the appellant there was a brief by *William A. Zabel,* district attorney of Milwaukee county, *O. L. O'Boyle,* corporation counsel, and *Clark J. A. Hazelwood,* assistant corporation counsel, and oral argument by *Mr. Hazelwood.*

For the respondents there was a brief by *Rubin & Zabel,* attorneys for W. B. Rubin and J. H. Rubin; *Bender, Trump, McIntyre & Freeman,* attorneys for Joseph Crowley; *Poss, Toelle & Schuler,* attorneys for J. C. Karel; *Bitker, Tierney & Puchner,* attorneys for J. L. Bitker, and *John M. Flynn,* attorney for Lisetta, Carl, and Evelyn Reichert; and the cause was argued orally by *Walter H. Bender, William B. Rubin, Irving A. Puchner,* and *James M. Flynn,* all of Milwaukee.

The following opinion was filed April 11, 1933:

FOWLER, J. There is no dispute that the bond in suit originally bound all the parties to it to payment of the checks drawn by Mr. Klatte against his deposits. The issues may best be treated by taking up successively the points relied on by the defendant sureties to relieve them of this obligation.

(1) *Mr. W. B. Rubin contends, and the circuit court ruled in his favor, that his notice of withdrawal effected his dis-*

*charge.* That his notice had such effect is ruled by *Bremer v. Rufener,* 186 Wis. 195, 202 N. W. 206. The agreement there involved was in effect like the instant bond. A principal and two sureties signed a bond conditioned that the principal should within a stated period after the expiration of each month pay all the patrons of a cheese factory for all milk delivered during the previous month. The court ruled that the bond was a continuous contract, involving a series of transactions, and that the sureties might terminate their future liability by giving definite notice that they would not be bound after a definite future date reasonable in point of time. Rubin's notice was given in 1926 and was a notice of absolute withdrawal. It was sufficient under the rule declared by the case cited to terminate his liability after a reasonable lapse of time. It cannot be contended that such period had not elapsed long prior to the commencement of this suit.

Guaranties for payment of purchases of goods to be made in the future are construed as continuing offers to guarantee payment of each purchase as a separate transaction, accepted when the sale is made. So construed, the offer, like an offer of guaranty on a single contract, may be withdrawn at any time before it is accepted. So of guaranties to banks to procure credit for future loans. *Gay v. Ward,* 67 Conn. 147, 34 Atl. 1025, 32 L. R. A. 818. The latter follows, by implication, from *First .Nat. Bank v. Wunderlich,* 145 Wis. 193, 130 N. W. 98. The contract in suit is of the same nature. The offer continues as to each deposit until revoked, and the making of the deposit constitutes an acceptance of the offer as to that deposit, and binds the sureties who have not withdrawn their offer to repayment of that deposit.

(2) *The sureties other than Mr. Rubin all contend that his release discharged them,* and the trial court decided in their favor upon the theory that the contract was a joint contract and that the rule at common law was that the release of

one surety (by the creditor) discharged all the others. We are of opinion that this theory is not tenable, irrespective of whether their contention as to the common-law rule is correct or not.

This is a several contract as well as joint. The withdrawal of Mr. Rubin did not destroy the several nature of the contract. Each surety had the option to remain on the contract or withdraw from it as he saw fit. The sureties all received notice of Mr. Rubin's withdrawal. Notwithstanding their right to withdraw, none of them, after receiving notice of Mr. Rubin's withdrawal, saw fit to exercise it. By their conduct in not withdrawing, the sureties acquiesced in remaining on the contract notwithstanding Mr. Rubin's withdrawal. By not withdrawing they lulled the plaintiff into believing that they elected to remain on the bond and prevented the procuring of a new bond, as he doubtless would have done had they all or several of them exercised their right of withdrawal. In this situation the sureties are estopped from claiming that they are not bound by the bond.

The contention of the respondents that the withdrawal of Mr. Rubin discharged them from the bond is based on cases of executed, not continuing, contracts of guaranty. If one guarantees a particular obligation of another, as the payment of a note, he has no right to withdraw his guaranty. He is absolutely bound by his executed contract. His obligation is complete. In case of a continuing guaranty, there is no reason for holding that the withdrawal of one surety shall operate as a withdrawal of the other. What the one has done the other may do. Why should one surety's withdrawal be construed, as matter of law, as doing for another what the other may do for himself if he so wishes? There is no call for the law to grant relief from an obligation to one who has in his hands the means of effecting his own relief. Why should the law do for one what he may do for himself? The reason for the rule that effects the release of a co-surety,

either wholly according to the ancient common-law rule applied in actions at law or in proportion to the released co-surety's obligation to contribution as between co-sureties according to the common-law rule applied in suits in equity, from a debt that he is irrevocably bound to pay, whether that reason be good or bad, does not apply where the co-surety may at will revoke his contract. Although we find no adjudicated cases upon the point, we conclude upon reason that the co-sureties were not released by the release of Mr. Rubin, and that his release did not at all affect·their several obligations.

This conclusion is contrary to that of the Minnesota court relied on by the trial judge, in *Stone-Ordean-Wells Co. v. Taylor,* 139 Minn. 432, 166 N. W. 1069, L. R. A. 1918 E, 93. It is, however, in full accord with that of the Idaho court in *Washington County v. Wieser Nat. Bank,* 43 Idaho, 600, 255 Pac. 310. In the latter case a statutory bond was involved, but the withdrawal of the surety was effected by notice as here, and we do not see that the distinction stated affords reason for rejecting the case as supporting authority. The Minnesota case applied the rule applicable to executed contracts imposing absolute liability to payment, which, as above pointed out, we consider not applicable to a case of continuing as distinguished from executed guaranties.

(3) *The heirs of Mr. Reichert, the deceased surety, contend that his death revoked his contract.* There is conflict of authorities on this point. A good part of the seeming conflict is due to a failure to distinguish between the nature of a completed or absolute guaranty and a guaranty that is continuing. Thus contracts guaranteeing the conduct of an agent, in case he is appointed by a principal pursuant to an offer of guaranty made by a surety, have been held to be completed or executed contracts of guaranty. This is the theory on which the following cases hold that such a contract binds the estate of a deceased surety for defaults of the agent

made after the surety's death: *Lloyd's v. Harper,* L. R. 16 Ch. Div. 290; *Shackamaxon Bank v. Yard,* 143 Pa. St. 129, 22 Atl. 908, 24 Am. St. Rep. 521; *Elam v. Commercial Bank,* 86 Va. 92, 9 S. E. 498; *Estate of Rapp v. Phœnix Ins. Co.* 113 Ill. 390, 55 Am. Rep. 427; *Royal Life Ins. Co. v. Davies,* 40 Iowa, 469; *Saint v. Wheeler & Wilson Mfg. Co.* 95 Ala. 371, 10 South. 539. The principle on which these decisions are based does not apply on the theory that each transaction constitutes a separate contract of offer and acceptance, applied in *Bremer v. Rufener, supra.* To the contrary are the following cases involving continuing guaranties like the one in suit: *Jordan v. Dobbins,* 122 Mass. 168; *Hyland v. Habich,* 150 Mass. 112, 22 N. E. 765; *Gay v. Ward, supra; Aitkin v. Lang's Adm'r,* 106 Ky. 652, 51 S. W. 154; *National Eagle Bank v. Hunt,* 16 R. I. 151, 13 Atl. 115; *In re Kelley's Estate,* 173 Mich. 493, 139 N. W. 250. In the first group of cases next above cited, a single consideration, passing when the contract was signed, was held to cover the entire contract. In the latter group, a new consideration covering each single transaction inheres in the offer and acceptance applicable to that particular transaction. Under the view taken in *Bremer v. Rufener, supra,* which we consider the correct view, the death of the surety operates as a withdrawal of the continuing offer. In some of the cases last cited the guarantee had notice of the surety's death. In the Massachusetts and Kentucky cases, however, it was held that the death, *ipso facto,* operated as a withdrawal. The surety can up to his death withdraw at any time. After his death his personal representative, presumably, knows nothing of the contract, and cannot act for him. There is therefore no one to act for him and the law implies the withdrawal. His estate is not to be held for a liability created after his death that he might have avoided by the exercise of the power to revoke which he might have exercised had he lived. Perhaps the better way to justify the rule is to say that as the continuing offer is not

accepted until the particular goods are sold, or the particular deposit made, no contract to guarantee payment of the particular goods or repayment of the particular deposit is ever completed when the goods are sold or the deposit made after the death of the surety. As in case of a single transaction, if an offer of guaranty were made and not accepted prior to the death of the person making the offer, no contract of guaranty would ever be completed, so here. The subject is treated in 42 A. L. R. 926 and 34 Anno. Cases, 852, and it appears that the majority of the cases consider that a notice of the death be brought to the guarantee in order that it shall operate as a withdrawal. However it seems to us that under the rule that contracts of suretyship, generally speaking, are construed favorably to the surety, the rule of the Massachusetts court should be followed and we therefore adopt it.

(4) *The other sureties contend that the death of Reichert operated to discharge them.* If Rubin's withdrawal did not so operate, it is not perceived why the withdrawal of Reichert through his death should discharge them. Besides, a discharge of a co-surety by operation of law does not operate to discharge his co-sureties. Brandt on Suretyship, 263; 50 Corp. Jur. p. 188. The discharge of Reichert by death was a discharge by operation of law.

Whether knowledge by the other sureties of Mr. Reichert's death is requisite in order that they be held upon the bond is perhaps a further question. That not withdrawing on receiving notice of Mr. Rubin's withdrawal constitutes acquiescence in remaining, is our expressed basis for holding the sureties bound by the contract notwithstanding his withdrawal. The evidence shows that defendants J. H. Rubin and Joseph Crowley knew of Mr. Reichert's death. Judge Karel, as county judge, presumably knew of it. They acquiesced in remaining on the bond, as they did on Mr. Rubin's withdrawal. There is nothing to indicate whether

the other surety, Mr. Bitker, knew of it. If knowledge of Mr. Rubin's withdrawal did not move Mr. Bitker to withdraw from the bond, it is not likely that knowledge of the death of Mr. Reichert would have done so, especially as Mr. Rubin's justification attached to the bond gives his worth as $40,000 while that of Mr. Reichert gives his as $5,000. In this situation we conclude that Mr. Reichert's death did not operate to discharge Mr. Bitker.

(5) *The defendants contend the bond continued in force only for a reasonable time and that time has expired.* It may be that a continuing guaranty that a purchaser of goods will pay therefor remains in force only for a reasonable time. But the contract in suit is not such a guaranty. It is a contract of suretyship. While the obligation of a guarantor and of a surety are alike in that both are bound for another, a surety is bound by the same instrument as is the principal and his obligations are in all respects coextensive with those of the principal. A guarantor's contract is separate from that of his principal, and he is bound only by the terms of his own contract. The contract in suit became effective immediately upon the signing of it and the depositing of money by Klatte and acceptance of the deposits by the bank, and it continued and was contemplated to continue indefinitely. By the contract the bank expressly agreed to repay the deposits on presentation of checks drawn against them by Klatte, and the sureties' obligation was the same as that of the bank. There can be no doubt that as long as Klatte and the bank continued to operate under the contract the bank was bound to pay as agreed. The sureties were bound to the same extent.

(6) *The term of the bond was for one year.* This contention is based on the fact that a statute at the time in force, sec. 717, Stats. 1917, relating to county depositories, provided that the term of the bond given by such depositories

should be for one year. This statute related only to deposits made by the county treasurer. As Mr. Klatte was not county treasurer the statute did not cover the bond in suit.

(7) *The plaintiff has not proved any damages as the banking commissioner may eventually repay the deposit in full.* This point is ruled against the defendants by the recent case of *Schlesinger v. Schroeder,* 210 Wis. 403, 245 N. W. 666.

(8) *Demand was not made until after the bank was taken over by the banking commissioner, after which compliance with the demand was prevented by law.* This claim is without merit. The obligation of the bond is to pay checks on presentment. Presentment was made. Payment was refused. The cause of the inability to pay is immaterial.

(9) *A statutory change in the law relating to the duties of Klatte as clerk of the civil court increased the obligation of the bank and thereby released the sureties.* The statute referred to, ch. 202, Laws of 1923, did not in any way effect such increase. The amendment merely authorized the clerk to deposit county funds in banks instead of with the county treasurer, and required him in case of such deposits to pay the interest received from the bank thereon to the county treasurer.

(10) *The deposit of more than $20,000 by Klatte at times in 1920 and 1921 released the sureties.* This contention is based on the rule quoted in the respondents' brief from 50 Corp. Jur. pp. 166, 167, as follows:

"If a surety has annexed conditions, to be performed by the creditor or obligee after the contract has been entered into, a failure to perform them releases the surety from liability."

The provisions relied on as bringing the case within the rule stated is a recital in the bond that the bank had been selected as a depository of funds received by Klatte not to exceed at any time $20,000. The penalty of the bond was $20,000. The provision was manifestly inserted for the pro-

tection of the county to keep the deposits within the amount of the penalty. The provision was not a "condition annexed by the sureties" but one inserted by the county. It did not at all affect the sureties' rights or obligation. They were only obligated to the extent of the penalty of their bond. It is stated in 50 Corp. Jur. p. 167, that "Failure . . . by the creditor (the bank) or obligee (Klatte) to observe provisions in the contract which were inserted for the benefit of the latter (Klatte) or which were inserted for the benefit of the principal (the bank)" . . . will not release the surety. The reason for the rule last stated is that the surety is not injured by the act involved. It is held in *Madison v. American S. E. Co.* 118 Wis. 480, 95 N. W. 1097, that violation of provisions in a contract for city work inserted for the benefit of the city will not relieve the sureties on the contract. To the same effect is *Smith v. Molleson,* 148 N. Y. 241, 42 N. E. 669. As the case does not come within the rule relied on the contention of respondents falls.

(11) *The appellant by paying the judgment for costs in favor of Mr. Rubin waived his right of appeal.* This claim is without merit because the payment, being made after execution was issued, was manifestly not a voluntary payment. For a payment of a judgment to justify refusal of this court to entertain an appeal it must appear clearly and conclusively that the payment was made to settle the controversy and voluntarily made with a view to such settlement. *Plano Mfg. Co. v. Rasey,* 69 Wis. 246, 34 N. W. 85. The dismissal as to Rubin was ordered on motion for a directed verdict, and Rubin entered judgment thereon without waiting for determination of the motions of the other defendants made after verdict. The judgment first entered in favor of Rubin was afterwards vacated by the court in order that one judgment might be entered disposing of all the issues, but this did not affect the fact that payment of the judgment previously made was not voluntary.

(12) *Judgment should have been entered in favor of the defendants because the evidence shows that they withdrew from the bond.* The jury found against the defendants on this point, and the question was clearly for the jury.

From the above it follows that the judgment must be reversed as to all defendants except W. B. Rubin, the bank, the commissioner of banking, and the heirs of John Reichert.

*By the Court.*—The judgment of the circuit court is affirmed as to the defendants W. B. Rubin, Franklin State Bank, Thomas Herreid as commissioner of banking, Lisetta Reichert, Carl Reichert, and Evelyn Reichert. As to the other defendants it is reversed with instructions to enter judgment in accordance with the complaint.

WICKHEM, J., took no part.

The following opinion was filed June 6, 1933:

PER CURIAM *(on motion for rehearing).* Counsel for respondents present a courteous and lawyer-like brief upon motion for rehearing, entirely free from the faultfinding and caustic criticisms which quite frequently of late have been indulged in by disappointed counsel for movants, and "assume" that the matters discussed in the opinion of the court "were given careful consideration, and that further presentation" of their "views would be unavailing," and merely ask relief in respect of matters not called to the attention of the court in their original briefs, and therefore not discussed in the opinion. Their restraint is commendable and we appreciate their respectful deference to our judgment. They merely ask, and quite properly, (1) that the court modify its mandate to permit the trial court to pass upon their alternative motion for a new trial because the finding of the jury on the question submitted to them in respect of their notifying the plaintiff of their withdrawal from the bond in suit is not supported by the evidence; and (2) that the court expressly declare whether the liability of the bondsmen, if

ultimately liable, is for the whole of the unpaid deposit or such proportionate share thereof as their number bears to the original number of the bondsmen.

(1) The defendants Crowley, J. H. Rubin, and Bitker filed in writing an alternative motion for a new trial on the ground above stated in event that judgment in their favor be not granted. The defendant Karel did not file a written motion, but on the oral argument joined in the motion of his codefendants. The trial court in granting the motion for judgment did not pass upon or express any opinion concerning this alternative motion, but refrained therefrom because he deemed it "unnecessary" to do so.

Counsel for movants cite several cases in support of their proposition that the motion for a new trial should be determined by the trial court, all of which except *Moody v. Milwaukee E. R. & L. Co.* 173 Wis. 65, 180 N. W. 266, were decided before sec. 2878, Stats., now sec. 270.49, was amended by ch. 477, Laws of 1917, by adding thereto that if motions for a new trial were not passed upon by the trial court within sixty days, or within such time as hearing thereon had been extended by order of the court, they should be deemed denied. The *Moody Case,* decided in 1920, which remands the case with direction that the trial court determine the motion for a new trial, makes no mention of this amendment, and was apparently decided without consideration of it. In *Miller v. Paine Lumber Co.* 202 Wis. 77, 93, 227 N. W. 933, 230 N. W. 702, doubt was expressed whether the trial court had power, under the statute as it stands in the Statutes of 1931, to pass upon a motion for a new trial after *remittitur* from this court, and it was suggested that the Advisory (Rules) Committee consider putting the matter beyond controversy. This has now been done by adding to sec. 270.49 a proviso that (as applied to the instant case) if an alternative motion for a new trial be made in connection with a motion for judgment and the trial judge grants the motion for judgment without expressly deciding the motion

for a new trial and the judgment shall be reversed, the cause may be remanded for determination by the trial judge of the motion for a new trial. See Court Rules, 207 Wis. iv. Under the statute as amended by this rule it is clear that the practice may now be followed that obtained prior to the 1917 amendment.

It is urged in opposition to the request to change the mandate that in our original opinion we decided that the evidence supported the verdict. It is true we said that "The jury found against the defendants on this point, and the question was clearly for the jury." However, the matter was not argued in the briefs and the portions of the record bearing upon the point were not called to our attention. We shall not enter into any statement or discussion of the evidence bearing upon the point, but will merely say that we are now persuaded that it is such that the trial judge should determine whether in view of it a new trial should be granted to the defendants and the mandate will be changed accordingly.

(2) We consider that each defendant ultimately bound will be liable for the entire amount of the deposit. As between themselves, liability for contribution may exist, but that point is not before us and we do not assume to decide it. Sec. 269.53, Stats., is referred to by movants in support of their contention, as is the case of *Hallock v. Yankey,* 102 Wis. 41, 78 N. W. 156, construing that statute. The statute is to the effect that a creditor may release one or more joint debtors from their proportionate share of the indebtedness. The releases here involved were not releases by the creditor (Klatte). The release was by operation of law as to the Reichert heirs and by act of the surety himself as to W. B. Rubin. The terms of the statute therefore do not apply. The *Hallock Case, supra,* applies the statute to a case of two sureties jointly bound with the principal on a note of a corporation. One of the sureties who was an officer of the corporation procured from the creditor an extension of time for

payment of the note. This released the other surety, who did not consent to the extension. By procuring the extension the other surety obviously consented to it so he could not claim a release. The extension was the act of the creditor and was considered under the statute as a release by him of the other surety, and was given effect as a voluntary release by him. The release here involved did not result from any act of the creditor, but was effected notwithstanding his (Klatte's) opposition. It cannot therefore be given effect as a voluntary release by Klatte.

As counsel have presented in the briefs filed on the motion for rehearing their views upon the questions raised, we perceive no reason for ordering a reargument of these questions.

The motion for rehearing is denied, without costs. The original mandate is modified by striking therefrom the provision for entry of judgment and substituting therefor a provision directing the trial court to determine the motion of the respondents for a new trial.