**CONTINENTAL CASUALTY CO. v. UNITED STATES, for Use of AINSWORTH, et al.**

**No. 5047.**

Circuit Court of Appeals, Seventh Circuit.

Jan. 29, 1934.

Rehearing Denied Feb. 28, 1934.

578

Earl S. Hodges and H. N. Tragethon, both of Springfield, Ill., and William P. Smith, of Chicago, Ill., for appellant.

W. Edgar Sampson and Harry C. Moore, both of Springfield, Ill., and W. B. McBride, of Taylorville, Ill., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The decree for appellees, from which this appeal is taken, was rendered in an equity suit against appellant as surety upon a bond in the penal sum of $100,000 given to secure deposits of bankruptcy funds in the Ridgely-Farmers State Bank, of Springfield, Ill., the principal of the bond, against loss on account of such deposits. The bond, with indorsement of approval thereon by the United States District Judge, is set forth in the margin.[1]

The bank failed and was closed December 29, 1932, since which time a receiver has been in charge; and up to the time of the hearing no dividend had been paid. At the time of failure bankruptcy receivers and trustees had on deposit in the bank bankruptcy funds aggregating $115,399.40, all of which remained unpaid. The suit was brought by the United States for the use of the several trustees and receivers in bankruptcy (199 in number) who had such deposits in the bank. The decree was for the full penalty of the bond.

Appellant contends that the cause of

[1] "Know All Men By These Presents, That we, Ridgely-Farmers State Bank, located at Springfield, Illinois, a corporation duly organized and existing under the laws of the State of Illinois, as principal and Continental Casualty Company, an Indiana Corporation, as surety, are held and firmly bound unto the United States of America for the use of whom it may concern in the penal sum of One Hundred Thousand Dollars ($100,000.00) lawful money of the United States of America for the payment of which sum well and truly to be made we bind ourselves, our successors, heirs, administrators and executors jointly and severally firmly by these presents.

"Witness our hands and seals at Springfield, Illinois, this 13th day of July, A. D. 1927.

"The condition of the foregoing obligation is such that whereas the said Ridgely-Farmers State Bank has been appointed by the Honorable Louis Fitz-Henry, Judge of the District Court of the United States for the Southern District of Illinois, a depository for the money of bankrupt estates in process of adjustment in said District under the Acts of Congress relating to bankruptcy.

"Now Therefore, if the said Ridgely-Farmers State Bank shall well and truly account for and pay over any and all funds and moneys of bankrupt estates which shall be deposited with it or come into its possession or control as such depository and shall in all other respects faithfully conform to and comply with all of the duties and obligations imposed upon it as such depository; then this obligation to be null and void, otherwise to be and remain in full force and effect.

"Ridgely-Farmers State Bank
"By Edward D. Keys, President.
"Attest Margaret P. Reinback, Secretary.
"Continental Casualty Company
"By Alvin S. Keys, Attorney in Fact.
"Approved this 26th day of July A. D. 1927.
"Louis FitzHenry, U. S. District Judge."

action, brought in equity to avoid multiplicity of suits, was cognizable at law and that equity does not have jurisdiction. It is maintained that the United States might have brought a single suit at law, and in case judgment was recovered each person entitled thereto could then have assessment of his damages made. In view of what we determined in Illinois Surety Co. v. United States, 226 F. 665, where just such a situation was presented, we deem it unnecessary to discuss the proposition. We there held that where a bond, in like form as here, had been given by a depository to secure the various deposits of bankruptcy funds, the action thereon should be brought in equity.

[■] It is urged that the District Court erred in hearing the case at the time it was heard, in that under Equity Rule 47 (28 USCA § 723) it was improper to set the case for trial before the expiration of 110 days after the cause was at issue.

The applicable facts thereon are: The bill was filed March 14, 1933, to which appellant filed a motion to dismiss. Both judges of that district being disqualified to act, District Judge Barnes of the Northern District of Illinois was designated. He sat at Springfield April 21, at which time the motion to dismiss was denied, the time to file answer extended to May 1, and the cause set for hearing May 19. Answer was filed April 29. On May 16 appellant served notice that it desired to take depositions, and that on the 19th it would move for a continuance before Judge Barnes in order to take depositions of named witnesses living more than one hundred miles away, and on May 19 appellant moved for continuance of the hearing accordingly. None of the moving papers indicated what was sought to be shown by such witnesses. On inquiry by the court, appellant's counsel said that one of the proposed witnesses was, at the time the bond was executed, in appellant's office at Chicago, and that he had conversations relative to execution of the bond; and that the other had knowledge of telephone conversations with one of the officers of the bank. Counsel said:

"We expect to show not only the computation of the return premium, but also the preparation of notices, and matters in the Chicago office, and conversations relative to the cancellation of this bond. * * * By this young man. I am not sure, but it is my understanding that he did have a conversation, or someone had."

Nothing which was so disclosed could

have tended to invoke the court's discretion to grant a continuance, nor to indicate an abuse of discretion in denying it. But it is contended that under the equity rule the case could not properly be set until the aggregate of time therein mentioned within which depositions might be taken had expired, which aggregate is 110 days.

In our judgment the rule (see margin [2]) does not contemplate that the time fixed therein is an inhibition upon the setting of the case within such time. We regard it rather as an inhibition upon the parties against postponement of the setting and the hearing of the cause beyond the times as fixed in the rule, unless indeed the statute otherwise provides. Deutsch v. Southern Corp. (D. C.) 53 F.(2d) 96; Reflectolyte Co. v. Edwin F. Guth Co. (D. C.) 31 F.(2d) 777; Kentucky-Tennessee Light & P. Co. v. City of Paris, Tenn., 48 F.(2d) 795 (C. C. A. 6).

[■] But even if appellant is correct in its construction of the rule, the record does not show that at the time the setting was made there was any objection thereto by appellant. Any right of insistence that the setting be not within the time fixed by the rule was thus waived. This left the disposition of the motion for continuance within the court's discretion, which we do not find to have been abused in denying the continuance.

[■] Appellant contends that under section 61 of the Bankruptcy Act (11 USCA § 101) providing that "Courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of bankrupt estates, * * * and shall require bonds to the United States, subject to their approval," it is necessary that in the record of a suit on such a bond there must appear in evidence an order made by the court designating the bank as a depository and approving the bond, and that no such orders are shown by this record.

---

[2] "The court, upon application of either party, when allowed by statute, or for good and exceptional cause for departing from the general rule, to be shown by affidavit, may permit the deposition of named witnesses, to be used before the court or upon a reference to a master, to be taken before an examiner or other named officer, upon the notice and terms specified in the order. All depositions taken under a statute, or under any such order of the court, shall be taken and filed as follows, unless otherwise ordered by the court or judge for good cause shown: Those of the plaintiff within sixty days from the time the cause is at issue; those of the defendant within thirty days from the expiration of the time for the filing of plaintiff's depositions; and rebutting depositions by either party within twenty days after the time for taking original depositions expires."

580

The pleadings do not specifically raise any such issues, and they cannot be first raised in the assignments of error and the briefs. But appellant is in no position to raise such questions. It executed and delivered the bond upon the assumption that the bank had been duly designated a depository, and during the intervening years appellant proceeded· upon the assumption that the bank had been duly designated as depository, and that the bond had been duly approved by the court. It well knew that the bank itself, and the receivers and trustees in bankruptcy, were relying upon the same assumption. The approval of the district judge was indorsed on the bond itself. Every act of appellant, including its letter of withdrawal from the bond, written nearly six years after the bond was executed, points unerringly to its assumption that it was, up to that time, a lawful surety upon a lawful. and effective bond. Under these circumstances we are of opinion that appellant is estopped from now asserting the want of any of the specified formalities. Richfield Nat. Bank v. Amer. Surety Co., 39 F.(2d) 387 (C. C. A. 8); Dickey County, N. D., v. Gesme, 51 N. D. 272, 199 N. W. 873; Bryson v. Fischer, 258 Ill. App. 502.

■ It is complained that the District Court abused its discretion in denying to appellant its requested leave to amend its answer by setting up the existence of a prior bond—given by the same bank in 1919 in the sum of $50,000 with surety approved by the court, as security to receivers and trustees depositing bankruptcy funds in the bank; and that such bond remained and was in force at the time this suit was brought; and it is asked that the sureties upon that bond be made parties to this action.

If there was such a bond (existence of which was in the proposed amendment alleged only on information and belief) and appellant was entitled as a matter of absolute right to have sureties on that bond made parties to this action, the denial of the motion to amend might have been an improper exercise of the court's discretion. But there was no such absolute right, nor indeed any right, in appellant to demand that such other sureties be made parties. The bond in suit provides that the obligors shall be jointly and severally liable. The statute of Illinois (Smith-Hurd Rev. St. 1933, c. 76, § 3, Cahill's Rev. St. 1933, c. 76, par. 3) provides that all joint obligations shall be several as well as joint. See Cummings v. People, 50 Ill. 132; Wisner v. Catherwood, 225 Ill.

App. 471; Scanlon v. People, 95 Ill. App. 348; and Tandrup v. Sampsell, 234 Ill. 526, 85 N. E. 331, 17 L. R. A. (N. S.) 852. Under the circumstances it was the right of the obligee of the bond in suit to treat as several any and all joint obligations, whether arising under one or under different bonds, and to prosecute its action against such of the obligors as it might select. Weger v. Robinson Nash Motor Co., 340 Ill. 81, 172 N. E. 7; Phillips v. Pedarre, 156 La. 509, 100 So. 699; 50 C. J. 278, §§ 466 and 467.

■ The disposition of a motion to amend is usually within the court's discretion; and while it might have been better to allow the amendment and to have brought into one action all possible parties in interest, we cannot find that the court abused its discretion in denying the motion—especially as the proposed amendment did not positively allege the existence of such a bond. We find no error in the court's ruling upon the motion to amend the answer.

■ The main controversy is over appellant's contention that its suretyship on the bond was terminated long before the bank's closing. There seems to be no serious dispute of the right of a surety to terminate its suretyship where, as here, the term of the obligation is unlimited and the thing secured to be done is the compliance. with specified contractual undertakings of the principal. The authorities well support the right to terminate. Emery v. Baltz, 94 N. Y. 408; Klatte v. Franklin State Bank, 211 Wis. 613, 248 N. W. 158, 249 N. W. 72; Crane v. Newell, 2 Pick. (Mass.) 612, 13 Am. Dec. 461; Yeargain v. Board, 90 Okl. 38, 215 P. 619; Clark v. Amer. Surety Co., 171 Ill. 235, 49 N. E. 481; 18 C. J. 589.

■ And so the question here is, not as to the right of appellant to terminate its liability, but as to whether the termination of the suretyship was in fact effected. What was done appears to have been wholly by correspondence, and the parties have stipulated in the record what the correspondence was. The court held that the correspondence did not effect such termination, and upon objection declined to receive it in evidence. If the correspondence did effect such termination, then, of course, it was error to reject it. We therefore consider the offered correspondence and its effect, stating its substance in the margin.[3]

---

[3] October 23, 1931: Appellant, by its "General Attorney," to Alvin S. Keys & Co., agents for the bank, describing the bond and saying, in substance, that the company has been requested by reinsuring com-

It seems evident from the correspondence that the District Judge was convinced of the bank's absolute solvency, but was desirous of avoiding possible disaster which, in the then precarious situation of finances generally, and of banks in particular, might ensue

panies to relieve them of liability on the bond, and requesting that something to that effect be done immediately; and saying that the position of the reinsurers makes it absolutely necessary to take all necessary legal steps to relieve appellant of liability.

October 30, 1931: General Attorney to Keys & Co., calling attention to the previous letter, and to the fact that on October 21 there was on deposit a balance of over $128,000, whereas the bond is for $100,000; and again calling attention to the reinsurers' insistence that liability under the bond be terminated, and that other arrangements for bond be made releasing appellant.

November 7, 1931: General Attorney to bank, inclosing copies of the two previous letters as indicating appellant's position.

November 6, 1931: General Attorney to Keys & Co., reciting that no answer had been received to letter of October 30, and stating "there is nothing left for us to do but proceed to relieve ourselves of liability. This we expect to do on Monday or Tuesday of the following week."

November 30, 1931: General Attorney to Hon. Louis FitzHenry, United States District Judge, Southern District of Illinois:

"This letter refers to the depository bond in the amount of $100,000.00 dated on or about the 21st day of July, 1927, signed by this company, as surety, for Ridgely Farmers State Bank of Springfield, Illinois, conditioned upon said bank well and truly accounting for and paying over any and all funds and monies of bankrupt estates, which shall be deposited with it as depository for said funds under its appointment as such by the Hon. Louis FitzHenry, Judge of the District Court of the United States for the Southern District of Illinois.

"A search of the records discloses that the only appointment of said bank as said depository of monies of bankrupt estates is that contained in the order of the said Hon. Louis FitzHenry, entered July 11, 1919, which order required said bank to give a bond in the amount of $50,000.00.

"We are informed that deposits of bankruptcy funds have from time to time exceeded the sum of $100,000.00, the amount of the bond signed as surety by this company, far in excess of the amount of the bond fixed in said order. We are advised that as of October 21, 1931, the sum on deposit was $128,261.54.

"The purpose of this letter is to notify you of our desire to be relieved of liability on said bond. This can be accomplished by a request upon the bank for a substitution of other sureties or the deposit of satisfactory securities and the compliance by the bank with such request, or the designation of another depository and the complete withdrawal of the funds."

November 30, 1931: General Attorney to bank:

"Herewith is a copy of notice which we are today forwarding to Judge FitzHenry. We contemplate sending a similar notice to the trustees and receivers of all bankrupt estates, who have money on deposit with your bank just as soon as we receive a completed list. We very much regret being compelled to take this action, but, under the circumstances, there is nothing left for us to do."

December 14, 1931: District Judge FitzHenry to General Attorney, stating that absence from Springfield trying a case at Peoria had delayed answer; that he had taken the matter up with Mr. Keys, vice president of the bank, and had "examined your surety bond and discovered it was given for a definite period, for a stipulated premium, and if there was a reservation of the privilege of cancellation it was not observed"; that the matter would be considered on its merits on the 19th inst.; and stating:

"It is the privilege of any bonding company to limit its liability to the fullest reasonable extent, but I don't think the adopted policy of the surety companies is doing very much to relieve the depressed condition of the country. Of course, I may be very much misinformed, but I regard the Ridgely Farmers State Bank as solid as the Rock of Ages. * * *

"I will be glad to write you further on the subject."

December 17, 1931: General Attorney to District Judge FitzHenry, calling attention to order for bond of $50,000 and to the fact that appellant's bond is $100,000, and that deposits were running around $125,000, and that this is unfair to the surety; stating that copy of bond is inclosed, from letter of which writer cannot discover that it was for a definite period as stated in the judge's letter; but stating that, being for an indefinite period and without cancellation clause, appellant believes that the surety has the right to terminate its liability; that otherwise the bond might run forever; and stating that the plan had been discussed with Mr. Keys, which plan has been laid before those interested. "We shall be very glad to hear from you further and we assure you that we will give full consideration to the working out of this situation, we hope to the satisfaction of every one concerned."

December 29, 1931: District Judge FitzHenry to General Attorney:

"The matter of your recent note to me was taken up with Mr. Keys of the Ridgley Farmers State Bank at Springfield on the 19th inst. Mr. Keys feels that he has bought and paid for a certain service from you and is entitled to receive that service.

"I am having steps taken to reduce the amount of funds on deposit in the Ridgley Farmers State Bank and believe in a very short time the amount on deposit will be within the obligation of the bond.

"It is the purpose of the Court to cooperate in every way possible and to be agreeable to those required to do business with us. We have on several occasions where banks were unable to procure a surety bond, accepted in lieu thereof the deposit of government securities. This, of course, takes them out of the live liquid assets of the bank, and while probably less expensive to the bank than the surety bond, it is less desirable to the bank.

"It is felt that this is a matter between you and Mr. Keys and if you gentlemen work out something that is agreeable to you, the Court will be glad to cooperate with you."

January 28, 1932: Appellant to District Judge FitzHenry, reciting that there had been previous correspondence between them respecting the bond, and saying:

"Our letter to you of November 30th advised you of our desire to be relieved of liability on said bond. We believe ample time has been allowed for the court or the bank to make other arrangements, but we have not been advised of such arrangements.

"We must, therefore, give you herewith formal notice of cancellation of said bond, effective ten days from the day you receive this letter, at which time all our liability as surety under said bond will fully terminate and be at an end. We tender to you herewith in legal tender, the unearned premium on said bond computed as of the aforementioned date.

"Similar advices together with a copy of this letter are being served on the said Ridgely Farmers State Bank."

January 28, 1932: Appellant to Ridgely Farmers State Bank, stating there had been correspondence with the bank and District Judge FitzHenry with reference to the bond, and stating that considerable time had elapsed since the bank and the judge had been advised that surety desired to be released from liability on the bond and had requested that other arrangements be made, and that surety has not been advised of any arrangement. "We feel that more

if large withdrawals of bankruptcy funds, under an order of court, were begun. It is easy to conceive that such a course—which appellant had suggested in its letter to the judge of November 30, 1931, as a plan for terminating its suretyship on the bond—might then have speedily brought on the very culmination which would have incurred and fixed appellant's liability on the bond. Appellant, disclaiming any purpose of further augmenting the general financial distrust by withdrawing from the bond, insisted its desire for termination was necessitated by its reinsurers, who desired to be relieved of their undertakings of reinsurance of the risk.

The correspondence prior to January 28, 1932, discussed such and kindred matters, but did not assume to terminate the suretyship. Appellant's letter of January 28, 1932, to District Judge FitzHenry was on the following day delivered to him in person at his chambers at Springfield, Ill., he receipting therefor; and at the same time there was tendered to him the amount of unearned premium on the bond, computed from February 8, 1932. A similar letter was on the same day delivered to the bank, with like tender of unearned premium. These letters stated that appellant had canceled its suretyship on the bond, effective ten days after their receipt by the addressees. After such delivery and tender, and up to the time the bank failed on December 29, 1932, it does not appear that there was any further correspondence or other action or proceeding of any kind on the part of appellant, or the bank, the district judge, the court, or of anybody else, with reference to this matter, among themselves or with others. Notwithstanding that in appellant's letter to the bank of November 30, 1931, it was stated that appellant intended to notify all of the many receiver and trustee depositors of bankruptcy funds of its intention to terminate its suretyship, no such notification appears ever to have been made.

In the absence of statutory provision for releasing sureties upon such statutory bonds, did delivery of the January 28 letters effect such a release? We think not. However much such a surety may wish to termi-

than ample time has elapsed and we must therefore give you formal notice herewith of cancellation of said bond, effective ten days from the day you receive this letter, at which time all our liability as surety under said bond will fully terminate and be at an end. We tender to you herewith in legal tender, the unearned premium on said bond computed as of the aforementioned date. Similar advices together with a copy of this letter are being served upon Hon. Louis FitzHenry, United States District Judge."

nate its suretyship, unless it is actually terminated it continues, and the public designed to be protected by such security may continue to rely thereon until such time as the surety has done all that is reasonably and lawfully necessary to be done in order to terminate its suretyship. Those depositing after this correspondence would be entitled to rely upon the records in the clerk's office, which failed to indicate that the bond which was there on file had been canceled or that the surety desired to be released from its obligation thereon.

Bringing to the judge in chambers a letter wherein a surety says that on a certain date it will no longer continue as surety on the bond, in our judgment will not of itself relieve the surety from its obligation, either on account of deposits which were theretofore made or those made thereafter. The placing of such a letter in the hands of the judge at chambers conveyed no information to depositors that thenceforth depositors would be without that security which the law contemplates they shall have. Nothing whatever appeared on the records of the court wherefrom depositors might know that the surety had terminated or was undertaking to terminate its liability on this bond, which had been continuously effective for over five and one-half years. There was no duty on the judge to formulate the letter into a petition for such termination, to file such petition with the clerk to ascertain who might be entitled to notice, and to give notice accordingly, nor on his own initiative to arrange for a hearing. Appellant took no steps whatever to obtain a hearing in court or to secure an order of the court for termination of its suretyship upon such terms as might be properly imposed, and the letter to the judge was to no extent an equivalent for such essentials. See Emery v. Baltz, 94 N. Y. 408; Vidi v. United Surety Co., 155 App. Div. 502, 140 N. Y. S. 612.

Such suretyship is not to be lightly entered into, and when undertaken is not to be lightly terminated. The surety assumes a continuous obligation whereon it knows the public is entitled to rely. We believe it reasonable and requisite that, in any event, before termination of the suretyship could be effected appellant should notify receivers and trustees who had bankruptcy funds on deposit in the bank in reliance upon the bond. We cannot regard the letter delivered to the district judge, nor the one delivered to the bank, or both, as giving such notice, nor as terminating liability of appellant's suretyship.

■ Of the total deposits of bankruptcy funds of $105,958.45 at the time of the alleged cancellation of the suretyship, it appears that $49,720.69 was still on deposit at the time the bank closed on December 29, 1932. Appellant would exonerate the bond from liability for this amount upon the contention that it then became the duty of the depositors to withdraw the bankruptcy funds from the bank unless arrangement for another surety bond was made. Apart from other considerations, we believe such contention is sufficiently answered by the fact that the record discloses no notice to or knowledge of these depositors, prior to the bank's failure, of appellant's desire or undertaking to withdraw from its suretyship.

Being of the view that the letters which were offered in evidence did not tend to indicate the termination of appellant's liability as surety, no harm resulted to appellant in the court's rejection of them, and no reversible error appears in such ruling.

[■ It is contended for appellant that in any event its liability should be reduced—first, by about $11,000 of checks given by the receiver and trustee depositors to various persons entitled thereto and not presented to the bank for payment within reasonable time after the checks were delivered to them, and unpaid at the time the bank closed; and, second, by the amount of claims which the bank might have set off against funds deposited in the bank by the trustee or receiver of such bankrupts as were indebted to the bank. Proffered evidence upon both these propositions was rejected by the court.

Apart from the fact that the pleadings in the case do not raise these issues, we are of opinion that, as to the first, since the amount of all such checks outstanding would not, if deducted, have reduced the aggregate deposits below the full penalty of the bond, the rejection of the evidence did not harm appellant; and, as to the second, we are of opinion that under such circumstances the right of set-off would not have existed in favor of the bank. Indebtedness of the bankrupts to the bank was in the capacity of the individual debtors. For this indebtedness the bank would have had a banker's lien on funds of the bankrupt which, on the bankruptcy, remained in the bank; but the bank would have no lien upon funds of any bankrupt which were deposited by its receiver or trustee in the bank after the bankruptcy. The trustee received and deposited the funds for the benefit of all the bankrupt's creditors, and in a capacity entirely different from that of the bankrupt himself. Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 S. Ct. 339, 49 L. Ed. 571. The bank could not set off against the trustee's deposits a debt which the bankrupt owed the bank. Gardner v. Chicago T. & T. Co., 261 U. S. 453, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622; Hood, Comm. of Banks, v. Brownlee, 62 F. (2d) 675 (C. C. A. 4).

■ Nor can we allow the contention that such dividends, if any, as may ultimately be payable upon indebtedness to the bank by some of the depositing bankrupt estates should be deducted from any recovery against appellant. If up to the hearing any such dividends had been paid to the bank or its receiver, such might have been shown in reduction of liability under the bond, if sufficient in amount to have reduced it. But no such showing was made, and no such unpaid dividends at time of decree appear from the record. Those entitled to the protection of the bond should not be delayed in their remedy thereon awaiting the outcome of such speculative uncertainty as dividends which may or may not come to the bank's receiver from estates of its bankrupt debtors. If and when dividends are realized which should be applied upon the liability which the surety on the bond has incurred and has paid, the surety may then undoubtedly by appropriate action recover them.

Appellant advances some further propositions which we consider too inconsequential to require discussion.

The decree of the District Court is affirmed.