NATIONAL BANK OF LA CROSSE, Respondent, vs. FUNK, Appellant.

*September 13—December 4, 1934.*

For the appellant there were briefs by *Lees & Bunge* of La Crosse, and oral argument by *George W. Bunge*.

For the respondent there was a brief by *George H. Gordon, Law & Gordon* of La Crosse, and oral argument by *George H. Gordon.*

The following opinion was filed October 9, 1934:

FOWLER, J.   The point at issue is whether the guaranties described in the above statement of facts cover the notes signed by the two Funks only.   The defendant's counsel claim that they do not because guaranties are strictly construed in favor of the guarantor.   They contend that the liability cannot be extended beyond that plainly expressed in the guaranty; that the liability guaranteed is that of the three persons named, not of two of them; that the liability guaranteed is that of a partnership consisting of the three persons named, not that of a partnership consisting of two of them. They also claim that the extension of time to pay the indebtedness released the guarantor, but as by the guaranties the defendant expressly consented to the renewals of any notes evidencing the indebtedness guaranteed there is obviously no merit in this contention.

The merit of the first proposition above stated hinges on whether the acceptance of the first note signed by the two Funks operated as payment of the indebtedness evidenced by the last notes signed by the three partners.   It is the settled law of this state that the giving of a note is not a discharge

-of the original and a creation of a new obligation, unless the parties have agreed to that effect, but is a mere continuance of the old obligation. The stamping of the word "paid" on the original note does not change the situation. *Rosendale State Bank v. Holland,* 195 Wis. 131, 217 N. W. 645, citing *Wisconsin Trust Co. v. Cousins,* 172 Wis. 486, 179 N. W. 801.

There is no evidence that there was any agreement of the parties that the giving of the first note signed by the two Funks only should cancel the old indebtedness, or of any agreement that on the execution of any subsequent note it was so agreed. Nor is there evidence that any such agreement was made on the signing of any of the previous renewal notes. The original obligations were therefore not satisfied by the execution of any of the renewal notes, and the original obligations, never having been paid or satisfied, were still in force at the commencement of the suit.

Counsel also contend that when the bank accepted the note signed by the two Funks it thereby released Hyde, and that the release of Hyde released the guarantor. But Hyde was released by his discharge in bankruptcy and release of a guarantor by operation of law does not release a coguarantor. *Klatte v. Franklin State Bank,* 211 Wis. 613, 622, 248 N. W. 158, 162, 249 N. W. 72, and cases cited. It is true the order of discharge was not signed until November, and the first note given by the two Funks only was executed in June. But the petition in bankruptcy was filed in May. This filing accounts for the dropping of Hyde from the notes. He had petitioned for discharge from the partnership obligations and his schedules filed clearly indicated that a discharge would follow. Hyde could not be compelled to sign a renewal note. And there being no agreement that the new note was accepted in payment of the original obligation, that obligation continued in force until the new notes or their renewals were

actually paid, notwithstanding the release of Hyde by the bankruptcy court.

The above rules the case in respondent's favor unless, as further contended by the appellant, the original partnership was dissolved by the bankruptcy of Hyde and the assumption of the partnership debt by the two other partners operated under provisions of the Uniform Partnership Act, ch. 123, Wis. Stats., to discharge the Funks from the original liabilities. The provisions relied on are sec. 123.26 (5) and sec. 123.31 (2) and (3). Sub. (5) of sec. 123.26 merely provides that the filing of a petition in bankruptcy by a partner dissolves a partnership. Sub. (3) of sec. 123.31 provides that "where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations." The evidence discloses that on Hyde's filing his petition in bankruptcy the partnership was dissolved and the two Funks assumed the partnership's indebtedness. But sub. (3) above quoted refers to the release of the obligations of the retiring partner from the partnership debts, not to the release from those debts of the two continuing partners. Such is the application of the statute (sec. 36 (3), Uniform Laws Annotated Partnership) made in *Lenger v. Hulst*, 259 Mich. 640, 244 N. W. 187, cited by defendant's counsel in support of his contention, and in *Wolverine Cigar Co. v. Knoppow*, 253 Mich. 343, 235 N. W. 177, and *Cameron & Hawn v. La Porte*, 216 App. Div. 579, 215 N. Y. Supp. 543.

Sub. (2) of sec. 123.31 provides that a partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor, and continuing partners. As applied

to this case the subsection would apply to the release of Hyde. The subsection continues to say that such an agreement as is mentioned may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the persons or partnership continuing the business. If such an inference as is mentioned were drawn, it would only refer to a discharge of Hyde. We perceive nothing in any of the statutory provisions stated to support counsel's contention that the original obligations involved were discharged by the renewal notes.

Counsel for appellant call attention to the fact that the judgment of the circuit court provides for interest thereon at the rate of seven per cent. Respondent's counsel concede that the rate should be six per cent. The judgment must be modified accordingly. The modification should not affect costs, as the matter was not presented to the trial court, where the correction should have been made and manifestly would have been had suggestion therefor been there made.

*By the Court.*—The judgment of the circuit court is modified as indicated in the opinion, and as modified is affirmed. The respondent will recover costs.

A motion for a rehearing was denied, with $25 costs, on December 4, 1934.