## UNITED STATES ex rel. TOWNSHEND et al. v. ROBSON et al.

### No. 2097.

District Court, S. D. West Virginia.
Jan. 3, 1935.

Okey P. Keadle, of Huntington, W. Va., for plaintiff.

Paul W. Scott and Walter L. Brown, both of Huntington, W. Va. (Scott, Graham & Wiswell and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for defendants.

NORTHCOTT, Circuit Judge (sitting by designation as District Judge).

This is a suit in equity to recover judgment against the respective sureties on two bonds given by the Huntington Banking & Trust Company to secure deposits of bankruptcy funds in that bank; one bond being in the sum of $10,000, bearing date April 14, 1918, and having as sureties the defendants Rufus Switzer and C. P. Nelson, and B. W. Foster, who died in the year 1922, and whose estate in the hands of his residuary legatee, the defendant Foster Foundation, a corporation, is sought to be charged with the obligation of the said bond, and Fred C. Prichard, a nonresident of this district and therefore not named as a defendant herein, and the other bond being in the sum of $40,000, bearing date April 3, 1931, and having as sureties the defendants H. A. Robson, H. D. Hatfield, E. L. Hogsett, Wm. J. Harvie, and F. C. Leftwich and E. K. Mahan, who has died since the institution of this proceeding, the suit having been properly revived as against the defendant Randolph Bias, the administrator of Mr. Mahan's estate.

This suit was originally brought on the $40,000 bond and in the original bill no mention was made of the $10,000 bond. After the institution of the suit and the filing of the bill, sureties on the bond sued upon filed a motion to dismiss the bill, alleging, among other things, that the $10,000 bond was still in force and effect and that the sureties thereon should be made parties defendant. Thereupon the plaintiffs filed their supplemental and amended bill in April, 1934, adding the sureties on the $10,000 bond as parties defendant.

No answer to the amended and supplemental bill has been filed by the sureties on the $40,000 bond; the attorney representing them stated, in open court, that they made no defense. Judgment will accordingly be given against these sureties.

Defendants Rufus Switzer and C. P. Nelson have filed a separate answer, as has the defendant Foster Foundation. The defendants who were sureties on the $10,000 bond set up in their answer the contention that the bond upon which they were sureties had been superseded by the $40,000 bond and that the $10,000 bond was not a valid and existing obligation after the giving of the later bond. Foster Foundation further set up the defense of Foster's death and the administration and winding up of his estate in due form, and contended that this fact relieved the estate of any liability on the $10,000 bond should it be valid.

The failed bank was designated a depository for bankruptcy funds by an order entered by Judge Keller, United States District Judge for the Southern District of West Virginia, on March 1, 1918. The order of designation reads in part as follows:

"2. Under the provisions of section 61 of the Act of Bankruptcy, the Court does hereby designate and appoint the banking institutions listed herein as depositories for the money of bankrupt estates. Each of said depositories shall give bond payable to the United States of America in the sum of $10,-000.00, said bond being subject to the approval of this Court. In the event the amount on deposit in any designated depository exceeds the amount of the bond as above, the Bank shall at once increase its bond to cover said excess. * * *

"Huntington Banking & Trust Co., Huntington, W. Va."

Pursuant to this order, the $10,000 bond was executed and remained the sole security given by the bank, for the deposits of the bankruptcy funds, until the execution of the $40,000 bond.

On February 9, 1931, George W. McClintic, United States District Judge for the Southern District of West Virginia (Judge Keller having died) having ascertained that deposits of bankruptcy funds had been made in the bank largely in excess of the amount of the $10,000 bond, wrote the bank the following letter:

"George W. McClintic
"United States District Judge
"Federal Building
"Charleston, West Virginia
"February 9th, 1931.
"Huntington Banking & Trust Co., Huntington, W. Va.

"Gentlemen: Late events in banking circles have made me, like a great many other persons, very nervous. There is a moral responsibility on me to see that the bankruptcy funds are properly secured, and the statute requires me to take a bond to secure the payment of them when they are asked for.

"There is in your bank considerable money. It had never been called to my attention that there was any money in your bank, and I had not looked for a bond. This morning I looked over the bonds in the Clerk's office and found one dated on the 16th day of April, 1918, for the sum of ten thousand dollars, signed by your bank and with B. W. Foster, Fred C. Prichard, Rufus Switzer and C. P. Nelson as bondsmen. The amount of money in your bank is largely in excess of this bond. I have no objections to your bank being a depository for bankruptcy funds, but I do insist that I must have an adequate bond at once. It is a part of the law that no bank shall have on deposit therein a greater sum of bankruptcy funds than the bond covers. The failure of certain banks has called my attention to the fact that in many cases, at least, where a bank fails, the bank president and many of the directors fail also. Luckily, at the time of the failure of the Union Bank in your town, the bankruptcy deposits therein were practically nothing, but I had an unpleasant time from the date of the failure until I found that out.

"Speaking frankly, in your case I am going to assume that if your bank should have trouble, Mr. Robson, Mr. Nelson and Mr. Switzer are going to be on the outside, and if you choose to send me a bond fully covering all the deposits in your bank, with the names of at least these three gentlemen signed as sureties thereto, I will accept it for the next six months. However, I want to call your attention to the fact that the First National at Bluefield, where the bond was signed by Mr. Edward Mann and others, has asked that the individuals be released from the bond and the privilege of giving surety company bonds granted. I really believe that it will be up to me, within six months, to require surety company bonds in every case, and if you would give a surety company bond now, I would much prefer it. One of the troubles now is that the bonds to the state, county, city and school districts are usually signed by the same president and directors, and unless they are very wealthy people, the bond proposition gets very heavy.

"Please give this matter immediate consideration.

"Yours very truly,
"Geo. W. McClintic,
"District Judge."

Following this letter Judge McClintic had some conversation or conversations with the officers of the bank about the matter, and on April 3, 1931, the $40,000 bond was executed and was approved by the judge of the District Court.

On April 8, 1933, the said bank was closed. Bankruptcy funds in the neighborhood of $80,000 were on deposit in the bank at that time, and the bank is admittedly insolvent and unable to pay the demands of the trustees in bankruptcy who deposited the funds.

Certain questions with regard to a part of these funds have been before this court and the Court of Appeals for the Fourth Circuit. Lamb v. Townshend (C. C. A.) 71 F.(2d) 590.

Considering first the question of liability of Foster Foundation, we find that the earliest deposit of bankruptcy funds made by any of the trustees, who are plaintiffs in the suit, was made in the year 1928. Foster died March 2, 1922, his will was duly probated, and the estate settled in accordance with the laws of West Virginia, and on March 14, 1923, the final settlement of the estate was approved and ordered recorded. The residue was turned over to the residuary legatee, Foster Foundation. There was no claim against the estate before it was settled because of liability under the bond nor could any have been made, as none of the deposits by the trustee plaintiffs was made until years after the settlement of the estate. A careful and painstaking review of the authorities on the point as to whether the death of one who is a surety on an obligation of this kind is relieved as to obligations incurred after his death has been made by attorneys representing the Foster Foundation, and consideration of the authorities cited in the briefs lead me unhesitatingly to the conclusion that the great weight of authority is to the effect that death does relieve the surety. Klatte v. Franklin State Bank et al., 211 Wis. 613, 248 N. W. 158, 249 N. W. 72; Jor-

dan v. Dobbins, 122 Mass. 168, 23 Am. Rep. 305; Hyland v. Habich, 150 Mass. 112, 22 N. E. 765, 6 L. R. A. 385, 15 Am. St. Rep. 174; Aitken v. Lang's Adm'r, 106 Ky. 652, 51 S. W. 154, 90 Am. St. Rep. 263; 2 Parsons, Contract (6th Ed.) p. 31; Pol. Contract, p. 21; 1 Brandt, Sur. (2d Ed.) § 134; American Chain Co., Inc., v. Arrow Grip Mfg. Co., Inc., et al., 134 Misc. 321, 235 N. Y. S. 228; In re Estate of Louis Lorch, 284 Pa. 500, 131 A. 381, 42 A. L. R. 922; Buckeye Cotton Oil Co. v. Amrhein et al., 168 La. 139, 121 So. 602.

The attorney for the plaintiffs relies upon a number of cases the circumstances of which in the main are different from those here. Generally they are cases in which the surety becomes bound for a definite time or for a certain thing and not cases in which the surety could withdraw on notice. Even were the authorities cited on behalf of the plaintiffs in point, they are largely in the minority. Plaintiffs have cited the following cases: Coleman v. Stone's Ex'rs, 85 Va. 386, 7 S. E. 241; Pond v. United States (C. C. A.) 111 F. 989; Hecht v. Weaver (C. C.) 34 F. 111.

Defendants Rufus Switzer and C. P. Nelson, who, with B. W. Foster, were signers of the $10,000 bond, and the Foster Foundation, make three contentions which are as follows:

(1) That under section 61 of the Bankruptcy Act (11 USCA § 101) the court had power to take only one bond, and that the $40,000 bond, when approved, superseded the $10,000 bond first given and extinguished the liability of the defendants as sureties thereon.

(2) That, even though the statute gives the court power to require an additional bond leaving the first bond in effect the original order of Judge Keller, Judge McClintic's letter requiring another bond for a greater amount, and the circumstances surrounding the giving of the $40,000 bond (the last one), all show that the $40,000 bond was intended to supersede the earlier bond and extinguish liability thereon.

(3) That the taking of the $40,000 bond constituted a change in the duties of the bank, which, without the consent of the sureties on the original bond, released them.

■■ We do not think the first contention is sound. That part of the act authorizing the giving of bonds to secure bankruptcy deposits reads as follows: "Courts of bankruptcy shall designate, by order, banking institutions as depositories for the money of bankrupt estates, as convenient as may be to the residences of trustees, and shall require bonds to the United States, subject to their approval, to be given by such banking institutions, and may from time to time as occasion may require, by like order increase the number of depositories or the amount of any bond or change such depositories."

Applying the rule of construction of statutes that, where possible, a statute must be so construed as to give it force, effect, and life, it will be at once seen that the provision authorizing the requirement of bonds and the increasing of the amount of any bond, necessarily carries with it the right to take two bonds at the same time or to leave the old bond in force and take a new, additional bond. It is not to be presumed that Congress intended to limit the court to the extremely narrow interpretation that only one bond could be given and that, if another bond were given, it would cancel the first bond. Such an interpretation would not be reasonable.

■ As to the second contention, a study of all the circumstances surrounding the giving of the last, or $40,000, bond leads me to the conclusion that it was intended to supersede the original bond and intended to be the only bond covering bankruptcy deposits in that particular bank; that when it was given it did supersede the original $10,000 bond and relieved the sureties on the old bond.

Judge McClintic's letter to the bank states that he will allow deposits to be made in the bank "if you choose to send me a bond fully covering all the deposits in your bank," and makes no reference to the existing bond. It is true that the sureties mentioned by Judge McClintic, in his letter, were not given on the new bond, but other sureties were offered and accepted by the judge and the amount of the bond given was the amount demanded. This leads me to the conclusion that the $10,000 bond was left out of the calculation. In addition to this, questions concerning these deposits were litigated through the District Court and through the Circuit Court of Appeals without any mention being made of any other than the one $40,000 bond. At the time Judge McClintic passed on these questions, according to his testimony, he passed upon them solely on the record, and did not inject into his decision his memory, but it seems clear to me that the $10,000 bond was not at that time either in his mind or brought to his attention, else some mention would have been made of it.

The questions litigated in the suit of Lamb v. Townshend were of necessity of great personal interest to the officers of the failed bank, especially to Harvie, who was executive vice president of the bank, who conducted the negotiations with Judge McClintic, respecting the $40,000 bond, and also was trustee of the bankrupt estate of Meadows, having in the bank a large deposit as such trustee, a deposit in excess of the amount the bank could lawfully receive; yet Harvie, so far as the record shows, called no attention to the first bond throughout all this litigation. In view of these circumstances, Harvie's testimony given in this case, that he regarded the $40,000 bond as being additional and as leaving the $10,000 bond in force is not entitled to much weight. In any event, how Harvie regarded the transaction would not be, in any way, controlling. It was not until some of the sureties on the $40,000 bond called attention to the $10,000 bond that any effort was made to hold, as liable, the sureties on the latter bond. Everybody connected with the transaction directly or remotely seemed to have disregarded the original bond until this action. No legal effect can attach to the act of the clerk of the court in the manner of his filing of the bond in question, when such act was not brought to the attention of the judge. These facts all support the conclusion that at the time of the giving of the $40,000 bond the $10,000 bond was superseded and the sureties on it relieved.

■ As to the third contention of the defendants that, if the $40,000 bond was taken as an additional bond, thus allowing an increase in the amount of bankruptcy funds that the bank could lawfully accept as deposits, such an increase constituted a change in the original obligation for which the signers of the $10,000 bond were sureties, as would, in the absence of consent, release the sureties on the bond first given. It is an accepted principle that any material change in an undertaking or its terms, without notice to or the consent of a surety, relieves the surety. This is a well-settled rule of the federal, as well as the state, courts. Miller v. Stewart, 9 Wheat. 680, 6 L. Ed. 189; Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Providence, etc., Co., v. Massachusetts, etc., Corporation (D. C.) 38 F.(2d) 674; Commercial National Bank v. London & Lancashire Indemnity Company, 56 App. D. C. 76, 10 F.(2d) 641.

This court recognized this as a settled principle in Fidelity & Casualty Company of New York v. Metal Window Products Company (C. C. A.) 30 F.(2d) 56.

Whether such a change as was made here would bring the instant case within the rule is a question that, in view of my conclusion as to the second contention of defendants, need not be discussed.

### Findings of Fact.

The following findings of fact are made:

That no defense is offered by the sureties on the $40,000 bond who are proper parties to this suit.

That B. W. Foster, one of the sureties on the $10,000 bond, died, and his estate was properly settled before any of the deposits which are the basis for this suit were made in the failed bank.

That the $40,000 bond given by the bank on April 3, 1931, was intended, at the time it was given, to be the sole and only security for the bankruptcy deposits in the bank and superseded the $10,000 bond.

### Conclusions of Law.

The following conclusions of law are reached:

That the defendants who are sureties on the $40,000 bond are each liable for the full amount of the bond.

That the sureties on the $10,000 bond given April 14, 1918, were relieved from any liability by the giving of the $40,000 bond.

That the defendant Foster Foundation, even were the $10,000 bond in force and effect, was relieved from any liability thereon by the death of B. W. Foster and the settlement of his estate before any of the deposits in question were made.

A decree will be entered in accordance with the above opinion.