STANLEY SCANDINAVIAN EVANGELICAL LUTHERAN CONGREGATION, Appellant, vs. LA CROSSE STEEL ROOFING & CORRUGATING COMPANY, Respondent.

*January 13—January 30, 1912.*

*Contracts: Guaranty: Breach: Evidence: Changing finding in special verdict: Appeal: Reversal: Direction as to proceedings below: Alternative motions.*

1. In an action for breach of a contract guaranteeing the slate roofing on plaintiff's building against leakage caused by defective workmanship, it is *held* that there was evidence from which the jury might find, as they did, that leakage in the roof was caused by defective workmanship; and it was error, therefore, for the court to change that finding.

2. Defendant moved the trial court to change a finding in the special verdict, and that if such motion should be denied a new trial be granted, and if the latter should also be denied that the damages be reduced. The court granted the first motion and gave judgment for defendant on the verdict as changed. Upon reversal of such judgment the cause is remanded with directions to consider and determine the other motions before awarding judgment.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

This is an appeal from a judgment in defendant's favor. The action is for damages for breach of a contract guaranteeing a slate roofing on the church building of the plaintiff. The case is stated in the opinion.

For the appellant there was a brief by *C. B. Culbertson* and *Bunge & Bosshard,* and oral argument by *Geo. W. Bunge.* *Jesse E. Higbee,* for the respondent.

SIEBECKER, J.   In the fall of 1906 the plaintiff built a church at Stanley, Wisconsin, the defendant having the subcontracts for the construction of the slate roofing and of the gutters and cornices.   Before final payment was made, the defendant gave the following guaranty to the building committee of the church:

"GENTLEMEN: We hereby guarantee the slate roofing which we put on your church against any leaking caused by defective workmanship on our part for a period of five (5) years."

. This is an action for damages under this guaranty.

The tower of the church, the roof over that part of the church called the sanctuary, and the roof over the main body of the church were covered with slate.   The rafters in the roof over the main body of the church are placed horizontally, parallel with the ridge of the roof, and are supported by three trusses.   The sheathing on this roof of the church is of birch and is nailed onto these rafters at right angles to them and runs from the ridge of the roof to the side walls.   This birch was not of uniform width and was not matched.   The sheathing on the tower and over the sanctuary is of hemlock and pine and the rafters in these roofs are so arranged that the sheathing is horizontal, unlike the sheathing on the main roof.

The roofer's specifications provided that the first row of slate above the gutters should be laid in slater's cement.   The evidence shows that this is to prevent water which might accumulate in the gutters, because of ice, snow, or other ob-

structions, from backing up under the slate and leaking into the building. Wherever there was a projection above the roof, such as chimneys and the tower, the specifications provided that flashing and counter-flashing should be placed by the roofers. The sheet of metal which is placed partly under the slate and bent up along the side of the projecting wall is called flashing. A similar sheet of metal fastened into the projecting wall or chimney above the flashing is bent down over the flashing and is called the counter-flashing.

That water leaks through the roof into the church is not disputed. There was evidence tending to show that there were a number of places on the ceiling of the church and of the sanctuary which showed stains from water leaking through the roof. There was evidence tending to show that the worst leak in the building came from water backing up in one of the gutters, and that the next worst leak was caused by the falling out of some of the counter-flashing.

The evidence showed that the defendant made repairs on the roof in 1908. There was evidence in plaintiff's behalf tending to show that the slate was nailed upon the roof by inexperienced boys and in an unskilful and unworkmanlike manner; that the slate had not been sorted according to thickness, and that the failure to so sort would leave an open space under part of a slate placed over a crack where slates of uneven thickness were placed together, into which snow and rain might be blown, and that the snow and rain on freezing might break the sheet of slate above it; that no slater's cement was placed under the layer of slate next to the gutter as provided by the specifications; that felt had not been placed under the slate as provided by the specifications, or that it had been torn because of poor workmanship; that the counter-flashing had been fastened with nails and had not been wedged in and fastened to the projections above the roof by lead, as good workmanship required; that the counter-flashing did not cover the flashing properly; that slate which was

not sorted was liable to be broken by sliding ice and snow at the places where it did not fit closely and smoothly upon the under layer; that a large number of sheets of the slate were broken; and that the sheets of slate had fallen in numbers from the tower, the main roof, and the roof over the sanctuary.

The court held that any damages caused by reason of defective gutters or cornices were not covered by the guaranty. There was evidence in defendant's behalf to the effect that the proper construction for the under roof for slate was such that the rafters would run from the ridge of the roof to the walls; that the main roof of the church had settled because of the improper construction, and that this was the cause of the widening of the cracks between sheets of slate in some places and of their being shoved together in others and of the breaking and falling of slates; that birch as sheathing under slate was liable to warp, and by pressing up against the sheets of slate cause them to break; that the trusses supporting the main roof were weak and insufficient; that by reason of the sheathing running with the pitch of the roof, many of the sheets of slate were of necessity nailed upon two boards, and that a shrinking and warping took place under these conditions which would cause cracking and breaking of the slate; and that the counter-flashing had become loose and fallen out because poor mortar had been used in the mason work.

The evidence of the plaintiff's witnesses upon the subject of the construction of the main roof of the church was to the effect that the construction provided in this case was not the best, but was probably all right.

The jury returned the following verdict:

"(1) Is the leaking through the slate roof of the plaintiff's church caused by defective workmanship on the part of the defendant? *A.* Yes.

"(2) If you answer question No. 1 'Yes,' then is it necessary in order to repair such defects to remove the entire slating and relay it? *A.* No.

"(3) If you answer question No. 2 'Yes,' then what would be the reasonable cost of removing the present slating and relaying it, using all the old slating as is suitable for such purpose?  *A.* ——.

"(4) If you answer question No. 1 'Yes' and question No. 2 'No,' then what would be the reasonable cost of repairing the defects occasioning such leaking?  *A.* $495."

The court upon defendant's motion ordered the answer to the first question changed from "Yes" to "No," and gave judgment for the defendant upon the verdict as so changed.

The appellant contends that the court erred in setting aside the finding of the jury in answer to the first question of the special verdict, whereby it was found that the leaking of the slate roof was caused by the defective workmanship of the defendant in constructing it.  From the foregoing statement of the case it appears that the evidence is undisputed that the roof has leaked in many places from the time it was built, that the slate was not sorted as required to make an even and smooth surface, and that slates broke at various times from its completion to the time this action was commenced.  There seems to be no dispute that some of the flashing was in an imperfect condition.  It however is not clear that this caused water to leak into the building.  The witness Staples, who was called as an expert, testified that the sorting of the slate was so imperfect as to leave the roof in so uneven a condition as to permit water and ice to collect between the sheets of slate and cause them to be displaced.  He also gave it as his opinion that the breaking of slate as observed by him could be caused by imperfectly nailing the slate too tight.  It also appeared that two inexperienced workmen assisted in laying the slate and that such work required skill and knowledge for a proper execution of this work.  In the light of this evidence it cannot be said as matter of law that there was no evidence permitting of the inference, as the jury found, that the leakage in the roof was caused by defective workmanship. We must therefore hold that the court erred in changing the

answer of the jury to the first question of the verdict from "Yes" to "No."

The record shows that the defendant also moved the court, in addition to the motion asking the court to change the answer to the first question, that if this motion should be denied a new trial be granted, and, in the event of the denial of the motion for a new trial, that the damages be reduced. The court having granted the defendant's first motion, changed the verdict, and thereon awarded defendant judgment on the verdict as changed, it of course follows that the court did not pass on the motion for a new trial nor on the one for a reduction of the amount of the damages found. Since the action of the court pursuant to the defendant's first motion must now be reversed and this motion stand denied, it is proper that the cause be remanded to the trial court with directions that it consider and determine defendant's other motions before judgment is awarded.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings as indicated in the opinion.