Moody, Appellant, vs. Milwaukee Electric Railway & Light Company, Respondent.

*November 18—December 14, 1920.*

*Street railways: Collision with automobile: Gross negligence: Contributory negligence: Question for jury: Appeal: Reinstatement of special verdict: Motion for new trial: Disposition of case.*

1. In an action for personal injuries, the testimony of the driver of an automobile, which was corroborated by that of a passenger riding in the front seat, that he looked and had a full view some three hundred and thirty feet up a street railway

track but did not see a street car which struck the automobile as it was crossing the tracks, is *held* to make the contributory negligence of the driver and of the plaintiff, who was sitting on the back seat with a curtain partly obstructing her view, a jury question.

2. Where the undisputed facts or the physical situation shows that an approaching car is within plain view of one approaching and about to cross a street railway track, the testimony of one so approaching that he looked but did not see it is not sufficient to take the case to the jury.

3. Direct and positive testimony that the driver of the automobile performed the duty imposed upon him by law in regard to the exercise of due care is sufficient to take the question of his negligence to the jury, unless such testimony is contrary to physical or conceded facts and is thus impeached because of utter improbability or impossibility.

4. Where the driver, who had a much better view than plaintiff, looked and saw no car approaching, the failure of the plaintiff to look, if she did fail to look, did not, as a matter of law, proximately contribute to the accident and injury.

5. Where the driver, while still on the crosswalk, had an unobstructed view for three hundred and thirty feet and saw no street car approaching, he was not negligent as matter of law in proceeding across the track without making further observations.

6. Evidence that a street car forty-two feet long and weighing twenty-four tons was operated on a down grade on a busy street at a high rate of speed does not justify the submission to the jury of the issue of gross negligence.

7. Where the trial court changed certain answers in the special verdict without passing on a motion for a new trial, the supreme court, on reinstating the answers of the jury, will remand the case with instructions to pass on a motion for a new trial.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

This action was brought to recover damages for personal injuries received March 29, 1918, at the intersection of Chambers and Third streets in the city of Milwaukee, when the automobile in which plaintiff was then riding was struck by defendant's street car. At the time in question plaintiff was riding in a Ford touring car driven by one Pierson. Plaintiff was sitting on the back seat with two

other ladies. The driver and another lady occupied the front seat. There was a small black curtain at the rear, on the left-hand side, but no curtain over the front side. The automobile was proceeding east on Chambers street, and the accident happened at the intersection of that street with Third street, which runs north and south.

The driver of the automobile testified that upon reaching Third street he looked to the north and saw no street car coming. He had a full view of the track for 330 feet and there was no street car approaching within that distance. He proceeded across the street, and before clearing the street-car tracks a south-bound street car coming on the west track struck the left rear wheel of the automobile, threw the occupants of the rear seat therefrom, seriously injuring the plaintiff.

A special verdict was returned by the jury, in which it was found (1) that the street car was being run at a dangerous rate of speed as it approached the point of collision; (2) that the motorman in charge of said street car was guilty of negligence in driving the same; (3) that such negligence was the proximate cause of the collision; (4) that the gong of the street car was sounded as the car approached Chambers street; (5) that there was no want of ordinary care on the part of the driver of the automobile in which plaintiff was riding which proximately contributed to produce the collision; (6) that there was no want of ordinary care on the part of the plaintiff which proximately contributed to produce the collision; and (7) damages $5,000.

The defendant made alternative motions to change the answer to question No. 7 of the special verdict (acquitting the driver of negligence) from No to Yes, to change the answer to question No. 8 (acquitting the plaintiff of contributory negligence) from No to Yes, and for judgment in favor of the defendant under said special verdict as so

changed and amended; for judgment on the uncontradicted evidence notwithstanding the verdict, and in the event that the foregoing motions be denied for a new trial, for fourteen reasons specified. The court granted defendant's motions to change the answers to the above questions from No to Yes, and upon the special verdict as so amended ordered judgment in favor of the defendant. From the judgment so entered plaintiff brings this appeal.

*W. A. Hayes* and *Henry Mahoney,* both of Milwaukee, for the appellant.

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* and oral argument by *Ralph M. Hoyt,* all of Milwaukee.

Owen, J. The jury by its verdict acquitted the plaintiff as well as the driver of the automobile of contributory negligence. The trial court changed the answers of the jury to the questions of the special verdict eliciting its findings upon those questions, and convicted both the plaintiff and the driver of contributory negligence. It is the claim of the appellant that the state of the evidence made these jury questions, and that the court erred in assuming to find with reference thereto as a matter of law.

It is conceded that it was the duty of the driver of the automobile as well as of the plaintiff to look and listen for approaching cars before attempting to cross the street railway tracks. The driver of the automobile and Rhoda May, who sat in the front seat with him, testified that as they approached Third street he slowed down to a speed of about four miles an hour; that he looked north and then looked south, saw no street car approaching, increased his speed to about six miles an hour, and proceeded on his way across Third street and across the tracks. There is positive and direct testimony, therefore, to the effect that he performed the duty which the law thus imposed upon him. This testimony is sufficient to take the question of the driver's negli-

gence to the jury, unless it is contrary to physical or conceded facts or common knowledge, thus standing impeached because of its demonstrated utter improbability or impossibility. *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N..W. 142, and cases cited.

Respondent contends that the evidence in the case indisputably shows that if the driver looked when he says he did, the car which struck the automobile was within the range of his vision, and that he cannot be heard to say that he looked, because, upon the undisputed testimony, if he had looked he would have seen the car. This court has said many times that where undisputed facts, or the physical situation, shows that an approaching car is within plain view of one approaching and about to cross a railway track, the testimony of one so approaching that he looked but did not see is not sufficient to take the case to the jury. *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 77 N. W. 179; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Schmidt v. Milwaukee E. R. & L. Co.* 158 Wis. 505, 149 N.. W. 221; *Meissner v. Southern Wis. R. Co.* 160 Wis. 507, 152 N. W. 291; *Spence v. Milwaukee E. R. & L. Co.* 163 Wis. 120, 157 N. W. 517. In order to invoke this principle, however, it must appear as an uncontrovertible fact that the car was within his range of vision at the time he claimed to have looked, and the question here is whether it can be said as a matter of law that the street car was within his range of vision at the time the driver of the automobile claimed he looked to the north.

A review of the evidence discloses that the location of the car at the time Pierson, the driver of the automobile, claimed to have looked, depends entirely upon the testimony of other witnesses, either directly or inferentially, and so far as their testimony tends to show that the car was within his range of vision it is simply in conflict with the testimony of the driver of the automobile and the witness Rhoda May, who say it was not. We are unable to find anything in the ·

record of the uncontrovertible nature of physical or conceded facts or common knowledge which is necessary to read the testimony of Pierson and Rhoda May out of the case and justify a court in entirely disregarding it.

The only physical facts we have in the case are distances. We know that the distance from the point of the accident to a certain canopy over the sidewalk up to the north is about 330 feet. We know that the distance which the automobile was required to travel from the time it reached the building line of Third street, when a view could be obtained as far north as this canopy, was forty-two feet. That is all there is in the case in the nature of physical facts. We know that if the driver of the automobile took his observations at just the point of the building line, a street car coming from beyond the canopy would travel eight times the distance covered by the automobile in order to collide with the automobile at the time of the accident, and if the observations were taken when the automobile had passed the building line a distance of six feet, then the street car would be required to travel nine times the distance covered by the automobile in order to reach the point of collision. Now we do not know exactly where the driver of the automobile made his observations. He says he made them while he was on the crosswalk. But as the crosswalk was fourteen feet wide, which amounts to one third of the distance necessary to be traveled by the automobile from the time the driver sitting therein had reached the building line, this does not afford us very definite information as to where he took his observations, as, under the circumstances, a few feet with reference to his location becomes very material.

Neither can it be told from the evidence at just what rate of speed the street car was coming. It is indisputable that it was coming very fast. The motorman admits that at the time of the collision it was going at twenty miles an hour; he admits that when it turned into Third street, a block above the point of collision, it was going between twenty-five

and thirty miles an hour. It is undisputed that from that point to the point of collision the street presents a very decided down-grade. While the rate of speed of the car, as is usual in such cases, is variously estimated by the witnesses, and inferences to be drawn from the testimony furnishing a basis for calculation of the speed are widely variant, it does plainly appear that the car was going at a very high rate of speed. One calculation made by appellant's attorneys, based on evidence in the case, shows that it was going at the rate of fifty-five miles per hour. This calculation, however, is based upon the statement of the motorman given upon the spur of the moment, without much reflection, that the collision took place within a second after he saw the automobile, and his estimate of the distance he was from the automobile at the time he first saw it. This, we agree, is not very satisfactory testimony upon which to base a finding with reference to the speed of the street car; but, nevertheless, it was evidence in the case to be taken into consideration by the jury with all other facts and circumstances bearing upon the question of the rate of speed at which the street car was traveling. There is very satisfactory evidence in the record that the street car was traveling thirty-six miles an hour. This is the evidence of Frank Lutz, who testified that he was going south on Third street in a Dodge automobile at the rate of fifteen to eighteen miles an hour; that the street car passed him about at the canopy going twice as fast as he was going, and that it did not slacken its speed prior to the accident. Similar testimony is given by his brother, William Lutz.

With reference to the speed of the automobile, the driver testifies that as he approached Third street he slowed down to four miles an hour, and that after looking for approaching cars he increased his speed to about six miles an hour, traveling in low speed all the time. Of course the jury had a right to consider that there was nothing accurate in the statement of any witness concerning either the speed of the

automobile or the speed of the street car. It can be figured out to a mathematical certainty that if the automobile proceeded, from the time it reached the building line, at the rate of four miles an hour, a street car coming from beyond the canopy at the rate of thirty-two miles an hour would collide with the automobile at the point of collision, and that if the driver had completed his observation when he had passed the building line by a distance of six feet, a car coming from beyond the canopy at a speed of thirty-six miles an hour would likewise collide with the automobile if it proceeded from there on at the rate of four miles an hour. When we consider that the testimony with reference to the speed of the automobile as well as the car rests in the estimate and judgment of witnesses, probably not very carefully weighed, concerning which there is a wide divergence of opinion, it seems to us that the entire question was one for a jury and one which could not be resolved as a matter of law. The positive testimony of the driver of the automobile that he looked, that he could see the track for a distance of 330 feet, and that there was no street car approaching within that distance, cannot be disregarded under all the facts and circumstances of the case, and the jury was not bound to disbelieve his assertion in this respect.

It is also argued on the part of the respondent that the driver and other occupants of the automobile could have seen further than 330 feet. This appears to be true, in the absence of temporary obstructions of the view, but Pierson's testimony is that there was a moving van in front of the canopy already referred to which obstructed his further view in that direction. Whether this was true or not is also a jury question. We think the court was in error in disturbing the findings of the jury with reference to these two questions.

We have not discussed the negligence of the plaintiff because it seems plain that if the driver looked and saw no car approaching, as his view was much better than that of the

Moody v. Milwaukee E. R. & L. Co. 173 Wis. 65.

plaintiff, who sat in the rear seat and whose view was necessarily obstructed by a curtain on the side of the automobile, her failure to look, if she did fail to look, cannot be said as a matter of law to have proximately contributed to the accident and injury.

We have given attention to the question of whether it was the duty of the driver of the automobile to look again, as under the testimony the automobile was still on the crosswalk when observations for street cars were completed. It seems plain, however, that when a driver so circumstanced has an unobstructed view for 330 feet and sees no street cars coming, it cannot be said that he is negligent as a matter of law in proceeding across the track without making further observations, and that this feature of his conduct was proper to be considered by the jury as bearing upon the question of his contributory negligence.

The appellant also claims error because the trial court declined to submit to the jury the question of whether the defendant was guilty of gross negligence. In the opinion of the writer, the operation of a car forty-two feet long, weighing about twenty-four tons, on a busy street, on a down grade, at the rate of speed at which the jury had a right to find this car was being operated, justifies a finding of gross negligence. It is conceivable that more dangerous agencies could be turned loose on a street—a ball shot from a cannon, for instance;—but a street car such as the one there and then operated, propelled at the rate of speed it was then going, beyond the power of the operator thereof to check the same perceptibly within any reasonable distance under emergency, is a menace, in my opinion, to the users of the streets, and evinces a wanton disregard for the lives and safety of others. The court, however, is of a contrary view, and considers that the evidence did not justify the submission of the question of defendant's gross negligence to the jury.

As the trial court granted respondent's motion to change

the answers of the jury to these two questions of the special verdict, it did not consider the motion for a new trial.   Respondent urges that if the action of the trial court in changing the answers contained in the special verdict of the jury be reversed, the case should be sent back with instructions to the trial court to pass upon the motion for a new trial. This request seems to be proper and in accordance with the established practice of this court.   *Stanley S. E. L. Cong. v. La Crosse S. R. & C. Co.* 148 Wis. 261, 134 N. W. 351; *Smith v. Winnebago Realty Co.* 153 Wis. 469, 475, 140 N. W. 327.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the answers of the jury to the seventh and eighth questions of the special verdict, and for further proceedings as indicated in this opinion.