**LANG v. ROGNEY.**

No. 14651.

United States Court of Appeals
Eighth Circuit.

Jan. 15, 1953.

Linus J. Hammond, St. Paul, Minn. (R. E. Cummins, St. Paul, Minn., was with him on the brief, Cummins, Cummins, Hammond & Ames, St. Paul, Minn., of counsel), for appellant.

A. Laurence Davis, St. Paul, Minn. (Morgan, Headley, Raudenbush & Morgan, St. Paul, Minn., of counsel), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

COLLET, Circuit Judge.

■ This is an appeal from a judgment for personal injuries. Plaintiff, a resident and citizen of Wisconsin, was struck by defendant's automobile and injured as he was crossing U. S. Highway No. 12 in front of his home, approximately one mile east of Black River Falls, Wisconsin. Defendant is a resident and citizen of Minnesota. The present action was brought in the United States District Court in Minnesota and tried before a jury. Jurisdiction results from diversity of citizenship and the amount involved. The substantive law of Wisconsin applies. The parties will be referred to here as they were designated in the trial court.

■ Defendant's brief does not comply with the rules of this court, particularly Rule 11(b) relating to points and authorities and the argument. This rule has been in effect in substantially its present form for many years. We have repeatedly called our rules to counsel's attention in other cases and have occasionally dismissed appeals on motion when a violation was flagrant. Although plaintiff's counsel directs our attention to the imperfections of defendant's brief, there was no motion to dismiss. The brief, other than its form and arrangement, is a good brief. Our concern that controversies reaching the courts be determined on their merits in the interest of substantial justice prompts us to subordinate the additional labor entailed upon us, because of the failure of a brief to properly set forth the points and authorities, and the argument under each, to the merits of a case. But the line of demarcation between a brief prepared in conformity with our rules and one which in form and arrangement violates our rules yet still may be adequate is sufficiently indefinable to commend compliance with the rules and make their violation at least hazardous.

Under the law of Wisconsin a plaintiff may recover when guilty of contributory negligence, if the defendant's negligence has been established and plaintiff's negligence is not as great as defendant's. The Wisconsin statute is:

"Sec. 331.045. Comparative negligence; when bars recovery. Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished by the jury in the proportion to the amount of negligence attributable to the person recovering."

■ Under the topic entitled "Evidence Insufficient to Sustain Judgment", in defendant's brief, he tacitly assumes that the evidence was sufficient to warrant a finding of negligence on his part and argues the insufficiency of the evidence on the ground that the proven facts show plaintiff guilty of contributory negligence as a matter of law in that plaintiff failed to prove defendant was negligent to a greater extent than plaintiff. We shall consider the question of the sufficiency of the evidence as that question is presented without separately considering the evidence of defendant's negligence, since the latter was in our opinion sufficiently established and its extent must be weighed in determining whether plaintiff's comparative negligence prevents a recovery under the statute above quoted. The evidence must be viewed in the light most favorable to the jury's verdict.

The accident occurred at about 7:30 p. m., Sunday, September 25, 1949. The pavement was dry. The sun had set at 5:56. The time of civil twilight, i. e., the interval of time between sunset and the instant when the center of the sun is 6 degrees below the horizon, was 29 minutes. It was practically dark, but, as plaintiff expresses it, "a little twilight yet." The highway was a much-traveled United States concrete highway. Plaintiff's home was located approximately 20 feet south of the right-of-way. The right-of-way consisted of a ditch and shoulder in front of plaintiff's

house, then a gravel shoulder and a gravel driveway leading to a filling station-garage, store and cafe on the north side of the pavement. The highway in front of plaintiff's home was straight and level, running substantially due east and west. About 800 to 900 feet east of his home it curved to the southeast.[1] Approximately 600 feet west it curved to the northwest. There were no obstructions to sight from plaintiff's front gate at the south edge of the right-of-way to the curve in each direction. The lights in plaintiff's home had been on before he left. There were three or four lights on poles along the south side of the highway between the curves. On the north side of the highway slightly to the west of plaintiff's home but almost directly across the highway from it was a store, cafe and filling station-garage. These buildings were set back from the highway with the filling station pumps between the building and the highway. Lights were on in and around these buildings. Plaintiff was 75 years of age at the time of the accident and was a night watchman at a factory. His work began at 8:00 p. m. Plaintiff testified that at the usual time, about 7:30 p. m., he left his home to cross the highway to the cafe to call a taxi to take him to work. He walked down the path and through the front gate. As he approached the concrete pavement there was no obstruction to his view to the east or west and he could see to both curves. When he got "pretty close" to the concrete he stopped and looked to the east. He did not see any vehicle coming from the east. He looked to the west and saw some cars coming around the curve from the west. He looked back to the east, saw nothing coming from that direction, and walked across the pavement. There was no crosswalk at this point. As he was walking across he could have seen to the curves in both directions. According to his testimony, "I was just stepping—I was just stepped off onto the gravel" on the north side of the pavement when he was struck by defendant's car, "after I got across". He did not see the car or its lights. He heard no horn sounded. Nor did he hear the sound of brakes being applied on defendant's car. His eyesight was good.

Several eyewitnesses to the accident testified in plaintiff's behalf. Mr. Paul Cooper, a county traffic officer, was in the first car which plaintiff saw coming from the west. Mr. Cooper stopped at a side street approximately 200 feet west of the cafe and the point of the accident to let out two passengers. While he was stopped there he looked up and saw plaintiff crossing the highway. When Mr. Cooper first saw him, plaintiff was practically in the center of the pavement. At the same time Cooper saw defendant's car with the lights on coming from the east. Practically at the same instant Cooper looked up and saw plaintiff in the center of the highway he heard the screech of the tires on defendant's car. Cooper testified that—"It seemed to me he (plaintiff) kind of fairly gave a jump to get across ahead of the car." He saw the car strike plaintiff. It came straight ahead with the tires skidding on the pavement, veering slightly to the right as it stopped. Cooper says that plaintiff was "right on the cement" when he was struck and that it seemed to him the car "just kind of knocked him over", plaintiff falling to the gravel on the north shoulder five or six feet from the edge of the pavement. Cooper measured the skid marks. They were 50 feet in length and at the last angled a little to the north. Cooper testified it was quite dark. The headlights on his car and other cars, including defendant's, were on. Cooper could not estimate the speed of defendant's car coming toward him before it struck plaintiff. He says it was practically stopped when it struck plaintiff, and that a small dent on the right front fender indicated where the car struck plaintiff. The headlight was not broken.

The defendant was called as a witness by plaintiff. He dimmed his lights for Cooper's car, and did not see plaintiff until he suddenly appeared in front of the left front

1. Speedometer measurement showed this distance to be approximately 2,000 feet, but plaintiff estimated it at about 50 rods.

We apply his estimate as more favorable to him.

wheel of his car, whereupon he immediately applied his brakes but was unable to avoid striking him. He said that his car was stopped approximately 15 feet beyond the point plaintiff fell, with the right front wheel a few inches off the concrete and the other wheels on the pavement. That when plaintiff was struck he was thrown "maybe 20 feet all together". That there was not time to sound his horn.

Mr. Robert Elmore, a student, 15 years old at the time of the accident, testified that he saw the accident. That he saw defendant's car approaching with the headlights on, at a speed of about 40 miles per hour, 275 to 300 feet east of plaintiff when plaintiff was at about the center of the pavement, looking straight ahead (north). That when plaintiff was five or six feet from the north side of the pavement the tires on defendant's car started screeching on the pavement. That at that time plaintiff appeared to look around at defendant's car. He estimated the distance between defendant's car and plaintiff at that time at 50 feet. That plaintiff was on the concrete, approximately a foot or a foot and a half from the north edge of the concrete when he was struck. That defendant's car was traveling approximately 10 miles per hour at the time it struck plaintiff. That when plaintiff was struck he was thrown approximately 15 feet and one of his rubbers knocked off and his teeth were knocked out of his mouth.

Pearl Sorlie operated the restaurant on the north side of the highway. She says she saw the accident through the window from behind the counter while she was waiting on some customers. She, alone, testified that the lights on defendant's car were not on. She says plaintiff stopped in the center of the highway and looked in both directions and then continued on across the highway. She also says that plaintiff was a couple of feet from the north edge of the concrete when he was struck. That the car was traveling 40 miles per hour. That defendant said after the accident that he "didn't see the man."

May Haldra was driving the car immediately following Cooper's. She did not see the accident but she heard defendant say that the car lights blinded him and he did not see plaintiff until he struck something, and that he couldn't have been going over 30 miles per hour.

The highway in the vicinity of the accident was zoned and signs were erected establishing the permissible safe speed in each zone. Some distance east of the east curve there was a 40 miles per hour zone. From the east curve west to beyond the point of the accident was a 30 miles per hour zone.

The Wisconsin statutes provide:

"Sec. 85.40. Speed restrictions. * *

"(2) (a) No person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing and the speed of the vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(b) The operator of every vehicle shall, consistent with the requirements of paragraph (a), operate at an appropriate reduced speed * * * when passing school children or other pedestrians, and when special hazard exists with regard to other traffic or by reasons of weather or highway conditions."

As to lights the Wisconsin statute requires:

"Sec. 85.06. Lighting equipment on vehicles. (1) Adequate Lighting Equipment Required. No motor vehicle shall be operated upon or occupy any public highway unless such vehicle is provided with sufficient lights, as required by this section, * * *.

"(2) Lights Required. (a) Headlights. Every motor vehicle in use on the public highways except motor cycles shall be equipped with at least two headlights in good working order. Such headlights shall display a white light of sufficient illuminating power under normal atmospheric conditions to reveal any persons, vehicles, or sub-

stantial objects two hundred feet ahead of the headlights. Motor cycles shall be equipped with at least one such headlight.

\* \* \* \* \* \*

"(h) Depressing headlights to avoid blinding drivers. Every person operating or driving a motor vehicle on the public highways shall, when approaching, and about to pass, any other person operating or driving a motor vehicle and traveling in the opposite direction, dim, depress or tilt the front headlights on his motor vehicle so that the rays projected therefrom will not blind the person whom such driver is approaching and about to pass. Sufficient light to see objects for seventy-five feet ahead of the vehicle shall be maintained. This paragraph does not apply to vehicles equipped with acetylene or similar gas lights."

On the question of right-of-way, Section 85.44(4) of the Wisconsin statutes provides:

"(4) Pedestrian Right of Way Forfeited when Jay Walking. Every pedestrian crossing a highway at any point other than a marked or unmarked crosswalk shall yield the right of way to vehicles upon the highway."

■ The evidence was sufficient to sustain a finding that defendant was negligent in the following particulars: (a) in operating his car at a higher rate of speed than was proper under the circumstances; (b) in not having his car under such control as would have enabled him to have stopped in time to avoid the accident; (c) in not having lights on his car which when dimmed would have disclosed plaintiff's presence at a distance of 75 feet, as required by the Wisconsin statute; and (d) in failing to keep such a lookout as would have resulted in him seeing plaintiff at a distance of 75 feet.

The first and most serious question is defendant's contention, above noted, that the facts show plaintiff guilty of such contributory negligence that as a matter of law his recovery was barred, and that plaintiff failed to prove defendant was negligent to a greater extent than plaintiff.

The trial court submitted to the jury the question of whether plaintiff was off the concrete and had actually relinquished the right-of-way to defendant at the time he was struck.

■ We have examined the evidence time and again on the question of whether there was any substantial evidence to justify submitting to the jury the question of whether plaintiff was off the concrete and had relinquished the right-of-way at the time he was struck. The major importance of that question will become apparent. We fail to find any justification in the record for a finding by the jury that plaintiff was not on the pavement when struck.

Plaintiff says that he was in the best position to know where he was at the time he was struck, and that his testimony that—"I was just stepping—I was just stepped off onto the gravel" when he was struck—"after I got across", was sufficient, coupled with defendant's testimony that plaintiff was—"just a few feet off it, perhaps only a foot away from the north edge of the concrete", to justify a finding that he was off the highway when struck, in spite of the positive testimony of all of the disinterested eyewitnesses to the accident that plaintiff was on the concrete slab when struck. The first part of plaintiff's above-quoted statement is at least ambiguous. He apparently started to say that he was just stepping off of the pavement and then corrected himself and said "I was just stepped off onto the gravel". Then on cross-examination the following occurred.

"Q. And about the time you were about ready to cross the street, or get across the street, you were struck? A. How?

"Q. Just as you were about ready to cross the street you were struck? A. Yes, after I got across—just stepping off from the concrete and that's the last I could remember."

The effect which plaintiff gives defendant's statement appears to us to be a misconception of what he intended to say. The skid marks and the testimony of the witnesses fix the direction of the car at only slightly veering to the right or north

as it stopped. When it was stopped ten or fifteen feet west of the point of impact, the right front wheel alone was off the pavement and it only a few inches, or at most less than a foot. On cross-examination by plaintiff's counsel, defendant testified:

"Q. You were in the north lane? A. That's correct.

"Q. And approximately where with reference to the north lane? A. Just about in the middle of it.

"Q. And your car proceeded directly ahead? A. Yes, it did. Now, you mean directly ahead when? I would like that statement clarified.

"Q. Well, you may state what your car did. A. Upon applying the brakes of the automobile, the automobile traveled in more or less a true westerly direction, although at the end of the skid it seemed to veer slightly to the right. So that when the automobile came to rest, as I remember it, the right front wheel was either at the edge of the concrete pavement or perhaps a few inches over on the shoulder. As I remember it, the other three wheels were on the concrete.

"Q. At any rate, you didn't see Mr. Rogney at any place on this highway until you were about 30 or 40 feet away from him? A. Until I was about 40 feet away from him and he was in front of my left front headlight, left front wheel, I didn't see him.

"Q. And at that time he was proceeding in a northerly direction? A. That is correct.

"Q. He was not running? A. When I first saw him, he was—well, that's hard to say. Actually it happened very quickly, as you might imagine. He did appear to be lunging— I believe that would be a good definition of the manner in which he crossed in front of me.

"Q. And it is your testimony that he was perhaps within a foot of the north edge of the concrete at the time your car struck him? A. Yes, I would say somewhere—he was near the edge of the north of the concrete."

Defendant's testimony does not support the conclusion that plaintiff was off the concrete when struck.

The testimony of the disinterested eye-witnesses, called by plaintiff, was positive and unequivocal that plaintiff was on the concrete when struck. The traffic officer Cooper testified: "He was right on the cement." The witness Elmore said: "I would say approximately a foot,—a foot and a half" on the concrete. And Pearl Sorlie fixed the place of impact—"It would be about a couple of feet on the concrete." And on cross-examination:

"Q. And he didn't leave the concrete pavement before he was struck? A. No."

There was no evidentiary basis to support a conclusion that plaintiff had yielded the right-of-way. And that would be true even if it could be said that reasonable minds might conclude that plaintiff had just stepped off the concrete when struck. In Grohusky v. Ferry, 251 Wis. 569, 30 N.W. 2d 205, 206, the Wisconsin Supreme Court points out that under the statute a pedestrian interferes with a motorist's right-of-way although the pedestrian actually had cleared the motorist's lane when struck. In that case the court said:

"We are not to be understood to say that plaintiff had any right to suppose that because he could cross the right hand lane ahead of defendant he would not interfere with defendant's right of way. That question has been settled adversely to any such contention by Post v. Thomas, supra [240 Wis. 519, 3 N.W.2d 344], and by Weber v. Barrett, 238 Wis. 50, 298 N.W. 53."

At the point plaintiff crossed the highway there was no crosswalk, either marked or unmarked. Therefore, it was plaintiff's absolute duty to yield the right-of-way to defendant and his failure to do so would be, under the law of Wisconsin, negligence as a matter of law. In Crawley v. Hill, 253 Wis. 294, 34 N.W.2d 123, 124, the Wisconsin Supreme Court said:

"Sec. 85.44(4), Stats. requires that a pedestrian crossing a highway at a point other than a crosswalk shall yield

the right of way to cars on the highway. Crawley [plaintiff] did not do that here. The fact that this was outside the city limits did not lessen his duty of yielding the right of way. See Grohusky v. Ferry, 251 Wis. 569, at page 572, 30 N.W.2d 205. His negligence in that respect is an established fact."

In DeGoey v. Hermsen, 233 Wis. 69, 288 N.W. 770, 772, in passing upon the question of whether plaintiff's failure to yield the right-of-way in crossing a highway at a point other than a crosswalk was negligence as a matter of law, the court said:

"Under these circumstances plaintiff was guilty of negligence in this respect as a matter of law, and this negligence, as well as that in respect of lookout, should have been compared with that of defendant."

■ The trial court should have instructed the jury that plaintiff was guilty of contributory negligence as a matter of law and that fact was to be taken into consideration in determining whether plaintiff's total negligence was equal to or greater than defendant's.

Although plaintiff was guilty of contributory negligence as a matter of law in this particular, it would not necessarily follow, as the authorities hereinafter referred to will show, that plaintiff's negligence was equal to or greater than defendant's. The general verdict sheds no light upon whether the jury found that plaintiff was negligent in not yielding the right-of-way and weighed that negligence against defendant's. If there had been a special verdict and the jury had found plaintiff negligent in this particular and still had found that plaintiff's total contributory negligence did not equal or exceed defendant's, it would be apparent that defendant had obtained all of the consideration from the jury which an instruction to that effect would have given, and defendant would be in no position to complain that the instruction was not given. But absent such a finding by a special verdict, we cannot assume that the jury did so find, and if it did not, we cannot assume that it would not have found plaintiff's

total negligence equal to or greater than defendant's if it had been instructed that plaintiff was guilty of negligence as a matter of law for not yielding the right-of-way. Since the evidence compelled a finding that plaintiff had not yielded the right-of-way when struck, the court should have instructed the jury that plaintiff was guilty of negligence as a matter of law in that particular, and defendant is entitled to a new trial in order to have the jury weigh that and any other contributory negligence of plaintiff against defendant's negligence. That is the precise reason the Supreme Court of Wisconsin directed a new trial in DeGoey v. Hermsen, 233 Wis. 69, 288 N.W. 770, supra.

■ The evidence was also sufficient to justify a finding that plaintiff was negligent in failing to keep a proper lookout. As stated in Saindon v. Lucero, 10 Cir., 187 F.2d 345, 347:

"A pedestrian at night is in a position to see oncoming automobiles at a great distance. The drivers of the automobiles may see him only within the range of their lights, but the ability of drivers to observe a pedestrian even within the range of their lights may be affected by such conditions as lights from other automobiles and the color of clothing worn by a pedestrian which blends into the color of the pavement."

This was a busy United States Highway. Plaintiff lived by it and knew that. He looked to the east before he went onto the pavement but did not look again as he crossed the pavement. Plaintiff insists he was not charged with the obligation under the law to look again. The cases he cites in support of that argument simply hold in effect that under certain circumstances the failure of a pedestrian to look again will not constitute such negligence as a matter of law as to bar his recovery. Salsich v. Bunn, 205 Wis. 524, 238 N.W. 394, 79 A.L.R. 1069; Schwartz v. Eitel, 7 Cir., 132 F.2d 760; Moody v. Milwaukee, etc., 173 Wis. 65, 180 N.W. 266. Under some circumstances it would and under other circumstances it would not be such negligence as to bar recovery. But that the facts in this case would justify a con-

clusion of negligence is not open to argument. The degree of that negligence, however, is another question.

Defendant contends that the evidence of plaintiff's negligence is such that we should hold as a matter of law that his negligence was equal to or greater than defendant's and hence he cannot recover. We do not agree. The Wisconsin authorities which we have examined lead us to the following conclusions as to the law of Wisconsin:

. That plaintiff's failure to yield the right-of-way was, under the statute, negligence as a matter of law. See cases heretofore cited and Post v. Thomas, 240 Wis. 519, 3 N.W.2d 344.

■ That ordinarily the comparison of plaintiff's negligence with that of defendant is the sole province of the jury when plaintiff's contributory negligence has been established. Carr v. Chicago, Northwestern R. Co., 257 Wis. 315, 43 N.W.2d 461.

■ That although the court has not only the power but it is its duty to so hold when it appears that the negligence of the plaintiff is as a matter of law greater than that of defendant, Quady v. Sickl, 260 Wis. 348, 51 N.W.2d 3; Peters v. Chicago, M., St. P. & P. Ry. Co., 230 Wis. 299, 283 N.W. 803, it is in rare cases that the court will disturb a jury's comparison of negligence, and the instances in which it can be said as a matter of law that the negligence of the plaintiff is equal to or greater than that of defendant will ordinarily be limited to cases where the negligence of each is of precisely the same kind and character. McGuiggan v. Hiller Bros., 209 Wis. 402, 245 N.W. 97; Quady v. Sickl, 260 Wis. 348, 51 N.W.2d 3; Cherney v. Holmes, 7 Cir., 185 F.2d 718; Parker v. Motor Transport Co., 253 Wis. 365, 34 N.W.2d 115.

In the first case decided after the present comparative negligence statute was enacted in Wisconsin, the court appears to have laid the foundation for the rule last above stated, wherein it said in Brown v. Haertel, 210 Wis. 345, 244 N.W. 630, 632:

"This is the first time that section 331.045 has received the consideration of this court. We shall not now say

that a case cannot arise where the court can decide the respective negligence of the parties to be equal. * * * If the negligence of each constituted [consisted] simply in a failure to look, and they both had ample opportunity to discover each other, it might be that their negligence would have to be held equal."

In that opinion the court refers to the language appearing in one of its previous cases, decided prior to the present statute, Dohr v. Wisconsin Central Ry. Co., 144 Wis. 545, 129 N.W. 252, 255 wherein Chief Justice Winslow said:

"When two persons are negligent and injury to one proximately results from the combined negligence of both, it must often be a very delicate and difficult question to decide whether the negligence of one was greater than that of the other, and contributed in a greater degree to produce the injury. There is no yardstick with which to measure the two acts of negligence, nor scales with which to weigh them."

After the enactment of the present comparative negligence statute the rule has developed as we have stated it above. Only when the negligence of each is of the same kind and character does the court find a sufficient yardstick with which to measure the acts of negligence and scales with which to weigh them.

It is unfortunate, in the present case, that the trial court did not submit special interrogatories in accordance with the Wisconsin practice, which would have developed the jury's conclusion as to which particular assignments of negligence submitted on the part of the defendant, and contributory negligence on the part of the plaintiff, the jury felt the parties were guilty of, and the comparative per cent of negligence of each which contributed to bringing about the accident. More will be said on that subject later in connection with the defendant's assignment of error in that regard. Since that was not done, it is incumbent upon us to do that which we have done, and point out which assignments of negligence and contributory negligence constituted submissible issues, and inasmuch as it is the

court's duty in the final analysis to determine whether there was sufficient evidence to support the jury's finding on each issue and defer to the jury's conclusion on all issues which were submissible, we asume that the jury by its general verdict in favor of the plaintiff found the defendant guilty of negligence on each of the issues heretofore enumerated. And in testing the correctness of the jury's general verdict in favor of the plaintiff, we assume that the jury found the plaintiff guilty of contributory negligence on each of the issues of failure to keep a proper lookout and failure to yield the right-of-way, which, as pointed out above, the evidence would have supported. In doing that we have done all that the defendant asks or can ask.

Under the facts in this case it is readily obvious that the negligence of the parties was not of the same kind and character. It is true that there may be some duplication in the defendant's negligence in operating his car at an excessive rate of speed and his negligence in failing to keep a proper lookout, and in the defendant's negligence in failing to keep a proper lookout and in failing to have the proper kind of lights. See Reynolds v. Madison Bus Co., 250 Wis. 294, 26 N.W.2d 653. But defendant's negligence in the speed that he was driving and his negligence in failing to have proper lights are entirely different in kind and character from the plaintiff's negligence in either failing to keep a lookout or yielding the right-of-way. Under these circumstances, the reviewing court does not have the right, under the law of Wisconsin, to say as a matter of law that the plaintiff's negligence was greater in degree than that of the defendant. There is, therefore, no justification under the law of Wisconsin for holding as a matter of law that plaintiff's

contributory negligence was equal to or greater than defendant's.[2]

The defendant contends that the trial court committed reversible error in not submitting special interrogatories to the jury to be answered in a special verdict. Defendant recognizes the fact that the submission of special interrogatories made mandatory in Wisconsin by statute upon timely request,[3] Pearson v. Kelly, 122 Wis. 660, 100 N.W. 1064; Dick v. Heisler, 184 Wis. 77, 198 N.W. 734; Gatzow v. Buening, 106 Wis. 1, 81 N.W. 1003, 49 L.R.A. 475, is procedural and appears to have been left to the discretion of the trial court by Rule 49(a, b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. But it is argued that the substantive law of Wisconsin on the construction and application of the comparative negligence statute makes it necessary to a just and true determination of the comparative negligence of the parties that the special interrogatories be used. It is of material assistance to any court in cases involving the Wisconsin comparative negligence statute to use the Wisconsin procedure relative to special interrogatories. But in federal courts the question is, as defendant recognizes, one of procedure, controlled by Rule 49(a, b) of the Federal Rules of Civil Procedure, and is within the discretion of the trial court. Skidmore v. Baltimore & O. R. Co., 2 Cir., 167 F.2d 54; Bank of Nova Scotia v. San Miguel, 1 Cir., 196 F.2d 950.

Error is assigned because of the failure of the trial court to give an instruction requested by defendant telling the jury that the evidence overwhelmingly showed that there were lights on defendant's car at the time of the accident and that the evidence of one of the witnesses (Mrs. Sorlie) that she did not observe lights on

---

2. Quady v. Sickl, 260 Wis. 348, 51 N.W.2d 3; Parker v. Motor Transport Co., 253 Wis. 365, 34 N.W.2d 115; McGuiggan v. Hiller Bros., 209 Wis. 402, 245 N.W. 97; Bent v. Jonet, 213 Wis. 635, 252 N.W. 290, 126 A.L.R. 1245; Carr v. Chicago & Northwestern R. Co., 257 Wis. 315, 43 N.W.2d 461.

3. "270.27. Special verdicts. The court may, and when requested by either party, before the introduction of any testimony in his behalf, shall direct the jury to find a special verdict. Such verdict shall be prepared by the court in the form of written questions, relating only to material issues of fact and admitting a direct answer, to which the jury shall make answer in writing. The court may also direct the jury, if they render a general verdict, to find upon particular questions of fact."

defendant's car should be disregarded. The requested instruction went further than that. It also contained the charge: "I instruct you that as a matter of law you cannot and must not find that the defendant did not have proper lights on his automobile immediately prior to and at the time of the happening of the accident." In view of defendant's own testimony that he did not see plaintiff until he was within 40 or 50 feet of him, and the statute which required defendant's car to be equipped with lights which, when dimmed, would disclose objects 75 feet ahead, the giving of the requested instruction would have been improper. The court did not submit the specific issue of whether the lights on defendant's car were on at the time of the accident but after reading the statute heretofore quoted to the jury, did submit the question of whether "the defendant failed to display such lights as required by said statute". This issue was properly submitted.

 The court gave an instruction embodying the doctrine variously referred to as "last clear chance", "discovered peril", or "humanitarian doctrine". Complaint is now made that no such rule of law is recognized in Wisconsin. 'Switzer v. Detroit Investment Co., 188 Wis. 330, 206 N.W. 407; Butts v. Ward, 227 Wis. 387, 279 N.W. 6, 116 A.L.R. 1441; Tesch v. Milwaukee Electric Ry. & Light Co., 108 Wis. 593, 84 N.W. 823, 53 L.R.A. 618. No such exception was made to the instruction in the court below. It may not be urged now. Rule 51, Federal Rules of Civil Procedure.

 Defendant contends it was error for the court to instruct the jury in effect that it was defendant's duty to drive his automobile at such a rate of speed that he could stop within the range of his vision and if blinded by lights of another car he should drive at such speed and under such control which would enable him to stop within such distance as he could see ahead. We find an objection to this instruction incorporated in defendant's motion for new trial, but we fail to find any exception taken at the time of the trial covering the complaint now made. The objection to the instruction in the motion for new trial was not timely. It may not be considered now. Further, the Supreme Court of Wisconsin held in Quady v. Sickl, 260 Wis. 348, 51 N.W.2d 3, that a driver blinded by lights of an approaching vehicle was negligent in proceeding at undiminished speed under such circumstances.

The cause is reversed and remanded for a new trial.